[929 NYS2d 215]

Ophelia Johnson, Respondent, v New York City Transit Authority, Appellant.

First Department, September 1, 2011

## APPEARANCES OF COUNSEL

*Wallace D. Gossett*, Brooklyn (*Lawrence Heisler* and *Lawrence A. Silver* of counsel), for appellant.

*Alexander J. Wulwick*, New York City, for respondent.

## OPINION OF THE COURT

RICHTER, J.

On the morning of May 20, 1998, plaintiff, then a 14-year veteran of the New York City Police Department Transit Bureau, was assigned to conduct a Train Order Maintenance Sweep (TOMS) of subway cars entering the 143rd Street station in the Bronx. A TOMS sweep consists of looking into each car of the train and checking for suspicious packages. After the train pulled into the station, plaintiff approached the conductor and told him that she and two other officers would be conducting a TOMS sweep. Plaintiff proceeded to the rear of the train while her fellow officers went to the front and middle.

Plaintiff testified that she was trained to check each car by standing with her left foot on the train, her right foot on the platform and her back against the doorway. She was in this stance inspecting the last car when the conductor closed the doors. As the doors were closing, plaintiff waited a second to see if the conductor was going to open them. She then put her left hand across her chest, closed her eyes, and pulled herself out of the doorway, falling into the wall or chair on the platform. During the incident, the train never moved.

Plaintiff brought this negligence action against defendant New York City Transit Authority, and the case proceeded to trial. At the close of the evidence, the trial court denied defendant's request to instruct the jury on comparative negligence. The jury found defendant liable and awarded plaintiff $700,000 for past and future pain and suffering, $500,000 for past loss of earnings and $1,200,000 for future loss of earnings. After the trial, defendant moved, inter alia, to dismiss the complaint for failure to make out a prima facie case. The trial court denied the motion and also denied, after a hearing, defendant's application for a collateral source reduction of the jury's damages award. Defendant now appeals from the judgment, arguing that the evidence at trial did not establish a prima facie case of negligence, that the court should have instructed the jury on comparative negligence, and that the court should have granted a collateral source offset.

■ We find that plaintiff submitted sufficient proof to make out a prima facie case that the accident was caused by the conductor's negligence. Plaintiff alerted the conductor of the TOMS sweep, yet the conductor closed the doors before the sweep was concluded and without any signal or announcement. Accordingly, the jury could have found that the conductor, aware that plaintiff was still in the process of conducting the sweep, should have checked or given some announcement before closing the doors (*see Kahlona v New York City Tr. Auth.*, 215 AD2d 630 [1995]).

■ However, the court erred in declining to instruct the jury on comparative negligence. A charge on comparative fault should be given "if there is a valid line of reasoning and permissible inferences from which rational people can draw a conclusion of [the plaintiff's] negligence on the basis of the evidence presented at trial" (*Bruni v City of New York*, 2 NY3d 319, 328 [2004]). "[W]hether a plaintiff is comparatively negligent is almost invariably a question of fact and is for the jury to

determine in all but the clearest cases" (*Shea v New York City Tr. Auth.*, 289 AD2d 558, 559 [2001]).

Here, a reasonable jury could have inferred from plaintiff's own testimony that she failed to exercise due care and that her actions, even to a minimal degree, increased the risk of injury to herself in the station. Plaintiff testified that as the doors closed, instead of immediately moving out of the way, she waited for a second to see if the conductor would open the doors. Plaintiff offered no testimony explaining why she believed this would occur or why she did not immediately step onto the platform or into the train, either of which would have been a logical response. Thus, a jury could have reasonably found that plaintiff's delay contributed to her getting caught in the doors.

Plaintiff also testified that she closed her eyes before pulling herself out of the doorway. Based on this testimony, a jury could find that she was at least partially at fault for not being more attentive in the face of imminent danger. A jury could also conclude that the fact that plaintiff's eyes were closed contributed in some manner to her falling down against the wall or chair on the platform. Furthermore, at no time did plaintiff try to alert the conductor or her fellow officers that she needed help. She did not call out to them, nor did she try to wave them down with her right hand, which, according to her testimony, was outside the train.[1]

■ Plaintiff's argument that, as a matter of law, the jury could not have found comparative negligence rests on her testimony that she was trained to conduct a TOMS sweep by standing in the doorway in the particular manner she used here. Her training did not, however, address the prudence of her response once she realized the doors were beginning to close. Moreover, the jury was not required to accept in its entirety plaintiff's testimony about her training, especially because she offered only generalities about it. Since the record does not reflect a total absence of comparative negligence as a matter of law, the trial court should have submitted that issue to the jury (*see Delemos v White*, 173 AD2d 353 [1991]).

■ Because the court failed to instruct the jury on comparative fault, the matter should be remanded for a new trial. However, the new trial shall be limited to that issue. In *Wright*

---

1. Nor did plaintiff explain how, if she had enough room to move her left arm from her side up to her chest, she did not have enough clearance to step sideways and put her left leg onto the platform.

*v Riverbay Corp.* (82 AD3d 444 [2011]), a case directly on point, this Court recently reversed a judgment because the lower court failed to charge the jury on comparative negligence. Instead of ordering an entirely new trial, we remanded the matter for a trial limited to the issue of whether plaintiff was comparatively negligent (*see also Delemos*, 173 AD2d at 354). We reach the same result here.

Citing *Thoma v Ronai* (82 NY2d 736 [1993]), the dissent argues that the matter should be remanded for an entirely new trial and that defendant should be given a second chance to contest its liability. However, *Thoma* arose in an entirely different procedural context and addressed only the question of whether the plaintiff had satisfied her burden on summary judgment. Here, in contrast, a full trial was held, and the jury concluded that defendant was negligent and that defendant's negligence was a substantial factor in bringing about plaintiff's injuries. Because we now find that the evidence at trial was sufficient to make out a prima facie case of defendant's negligence, there is no reason for a new trial to revisit this issue. The dissent's contention that the evidence "raises issues concerning [defendant's] fault" and that "a triable issue exists as to defendant's negligence" fails to recognize the jury's finding that defendant was negligent. The only triable issue remaining here is the extent to which, if at all, plaintiff's own negligence may reduce the damages awarded by the jury.

*Lopez v Garcia* (67 AD3d 558 [2009]), which also arises in the summary judgment context, presents a different legal issue and, in any event, is inconsistent with this Court's more recent precedent in *Gonzalez v ARC Interior Constr.* (83 AD3d 418 [2011]). In *Gonzalez*, we affirmed the motion court's grant of partial summary judgment to the plaintiff on the issue of the defendant's liability. We held that because comparative negligence is not a complete bar to recovery, the plaintiff was entitled to summary judgment as to defendant's negligence even though there were issues of fact as to her own culpable conduct (*id.* at 419; *see also Strauss v Billig*, 78 AD3d 415 [2010], *lv dismissed* 16 NY3d 755 [2011]; *Tselebis v Ryder Truck Rental, Inc.*, 72 AD3d 198, 200 [2010]).

In finding that an entirely new trial is necessary, the dissent argues that the court's failure to charge comparative negligence was plaintiff's fault and that it would be unfair to preclude defendant from challenging its own liability. However, the proper scope of the new trial has nothing to do with which party bears

responsibility for the court's error. As for fairness, the dissent fails to appreciate that granting an entirely new trial would be unfair to plaintiff because it would give defendant, which already lost on this question at a jury trial, an unwarranted second chance to contest its liability. We do not share the dissent's concern that the playing field will be unfairly tilted by charging the jury at the new trial that defendant's negligence has already been determined. Any potential prejudice to defendant can be easily averted by an appropriate jury instruction that makes clear that the extent of defendant's liability and plaintiff's comparative fault are for the jury to decide. Furthermore, special interrogatories, carefully tailored to the circumstances of this case, will avoid any prejudice to defendant. Finally, at a comparative negligence trial, defendant will have ample opportunity to show, if it can, that the accident was primarily plaintiff's fault.

After the trial, the court held a hearing on defendant's application, pursuant to CPLR 4545 (a), to offset the jury's loss of earnings award by the amount of plaintiff's disability pension.[2] The evidence at the hearing established that plaintiff joined the police force in July 1984. In April 2002, approximately two years before she would have been entitled to a regular service retirement pension, she was granted an accidental disability retirement pension based on her line-of-duty injury. Plaintiff's disability pension was equivalent to three quarters of her salary, was not subject to state or federal taxes, and, like the regular service retirement pension, was payable for life. In a written decision, the trial court denied the application, finding that defendant did not satisfy its burden of showing that the disability pension replaced the loss of earnings award.

In a personal injury action, the court must reduce the damages award "if . . . any element of the economic loss encompassed in the award was or will be replaced, in whole or in part, from a collateral source" (*Oden v Chemung County Indus. Dev. Agency*, 87 NY2d 81, 83-84 [1995]; CPLR 4545 [a]).[3] An offset is permitted "only when the collateral source payment represents reimbursement for a particular category of loss that corresponds

---

**2.** At the time of trial, the relevant language in subdivision (a) was included in subdivision (c). The statute was subsequently renumbered and partially amended.

**3.** The defendant must also show a high probability that the plaintiff will continue to be eligible for the collateral source payment in question. The trial court concluded that defendant met its burden in this regard, a finding not challenged on this appeal.

to a category of loss for which damages were awarded" (*id.* at 84). In other words, there must be a match between the item of economic loss awarded by the jury and the collateral source payment. Because CPLR 4545 (a) is in derogation of the common law, its provisions must be strictly construed (*id.* at 86), and the defendant has the burden of establishing entitlement to a collateral source offset by clear and convincing evidence (*Kihl v Pfeffer*, 47 AD3d 154, 163-164 [2007]; *Young v Knickerbocker Arena*, 281 AD2d 761, 764 [2001]).

The trial court, correctly found that defendant did not meet its burden of showing that the loss of earnings award should be offset by the amount of plaintiff's accidental disability retirement pension. Defendant does not dispute that under *Oden* it bears the burden of showing that there is a "direct correspondence" between an item of economic loss awarded by the jury and a collateral source payment (87 NY2d at 87). Defendant argues, however, that a disability pension can only be construed as a replacement for the wages plaintiff would have earned if she had not been injured and had remained on the police force.

However, *Oden* rejected such a broad rule and declined to allow the disability pension there to offset the jury's lost earnings award. The mere fact that the benefit at issue here is termed a disability pension does not end the inquiry; *Oden* requires that there be a direct match between the benefit and the loss of earnings award. Here, there was insufficient evidence in the record to meet defendant's burden of establishing that this particular disability pension was meant to replace plaintiff's lost earnings. Nor does defendant identify any statute or legislative history to show that the pension received by plaintiff was intended to be a substitute for lost earnings as opposed to an early retirement benefit conferred upon police officers accidentally injured in the line of duty. Although certain sections of the Administrative Code of the City of New York relate to disability pensions for New York City police officers (*see e.g.* Administrative Code of City of NY §§ 13-252, 13-254), neither the briefs in the trial court nor the briefs submitted to this Court identify these statutes as governing plaintiff's disability pension. We cannot assume that these provisions are applicable, and, in the absence of any citation to them by defendant, we decline to speculate.

Although this Court must take judicial notice of statutes, defendant has not explained which of the myriad pension provisions applies to this plaintiff. The judicial notice question here

is particularly complex in light of the fact that plaintiff was previously employed as a transit police officer by the New York City Transit Authority. Thus, it is not clear which pension provisions of the Administrative Code or other statutes might apply here.

We reached the same conclusion and found that the defendant had failed to meet its burden of showing that the disability pension replaced the jury's lost earnings award in *Gonzalez v Iocovello* (249 AD2d 143 [1998], *affd on other grounds* 93 NY2d 539 [1999]). To the extent this Court's decision in *Iazzetti v City of New York* (216 AD2d 214 [1995], *appeal after remand* 256 AD2d 140 [1998], *revd on other grounds* 94 NY2d 183 [1999]) purports to stand for the broad proposition that disability retirement benefits always constitute an offset of a lost earnings award, it is inconsistent with *Oden*, which is the controlling precedent.

We do not hold that *Oden* sets forth a general rule that disability pensions can never be a substitute for lost earnings. We merely conclude that, in this case, defendant did not meet its heavy burden to show its entitlement to an offset. *Oden* instructed that "[t]he problem of matching up a collateral source to an item of loss is simply a matter of proof and factual analysis" (87 NY2d at 89). Here, defendant's proof falls far short of the clear and convincing evidence necessary to support a collateral source offset in this case (*see id.* at 88-89; *Gonzalez*, 249 AD2d at 144).

Accordingly, the judgment, Supreme Court, Bronx County (Howard H. Sherman, J.), entered March 25, 2009, upon a jury verdict, awarding plaintiff the principal sums of $700,000 for past and future pain and suffering, $500,000 for past loss of earnings and $1,200,000 for future loss of earnings, and bringing up for review orders, same court and Justice, entered September 10, 2007 and on or about July 16, 2008, which, inter alia, denied defendant's posttrial motion to dismiss for failure to make out a prima facie case and, after a hearing, denied defendant's application for a collateral source offset pursuant to CPLR 4545 (a), should be reversed, on the law, without costs, the judgment vacated and the matter remanded for a new trial limited to the issue of plaintiff's comparative negligence.

FRIEDMAN, J. (dissenting in part). I agree with the majority that the trial court erred in failing to submit to the jury the issue of plaintiff's comparative negligence. In my view, however,

at the new trial to be held on remand, both defendant's liability and plaintiff's comparative negligence should be at issue. That is to say, one jury should consider, afresh and in a single deliberation, each party's responsibility, if any, for the accident. The previous jury's determination of defendant's liability, rendered without consideration of plaintiff's conduct, should play no role. Where fault must be apportioned between two or more parties, the issue of each party's liability is inextricably intertwined with the apportionment itself. Moreover, it can reasonably be anticipated that the jurors at the new trial will be subtly prejudiced against defendant if they are instructed to begin by assuming that defendant was at fault and only then to consider whether plaintiff herself bears any degree of responsibility for her injuries. By the same token, it is reasonable to infer that a liability verdict against defendant was rendered more likely at the first trial by the court's decision not to submit for the jury's consideration the issue of plaintiff's comparative negligence. Since the evidence raises issues concerning each party's fault, fairness demands that the liability phase of this matter in its totality—encompassing defendant's liability, plaintiff's comparative negligence, and the parties' relative culpability—be submitted to the same factfinder at one trial.[1]

Further, I cannot see that plaintiff should be heard to complain of the supposed inefficiency of retrying the issue of defendant's liability. Plaintiff herself bears a significant measure of responsibility for that inefficiency, as no retrial would have been needed but for the erroneous ruling at the first trial, made at plaintiff's behest, that the jury would not be charged on comparative negligence. In any event, as a practical matter, the new jury will not be able to apportion fault between the parties unless it is presented with evidence of defendant's conduct. In other words, the parties' relative fault cannot be determined by consideration of plaintiff's conduct alone. Given the interdependency of the proofs bearing on the issues of liability and apportionment, withholding the issue of defendant's liability from the jury apportioning fault will not realize any significant judicial economy.[2]

Contrary to the majority's assertion, I do not "fail[ ] to recognize" the first jury's liability finding against defendant. Rather,

---

**1.** I do not share the majority's confidence that "[a]ny potential prejudice to defendant" at the new trial can be "easily averted" by an unspecified "appropriate jury instruction" and similarly unspecified "special interrogatories."

**2.** I note that this panel is in unanimous agreement that there is no need to retry the issue of damages, which does yield a considerable judicial economy and savings to the parties.

I consider that finding to be tainted by the court's legal error in withholding the comparative negligence issue from the jury. I respectfully disagree with the majority's apparent assumption that the error in failing to issue a comparative fault charge had no effect on the jury's consideration of defendant's liability. Further, the majority's concern that it would somehow be "unfair" to plaintiff to order a retrial of the issue of defendant's liability overlooks the fact that a new trial is required because of a legal error that the trial court made at plaintiff's behest (that is, the court ruled that comparative fault would not be charged upon plaintiff's objection to defendant's request for such a charge). In cases where a legal error has occurred at a trial (usually, as here, at the behest of the winning party), appellate courts routinely give the losing party, notwithstanding that it "already lost on [the] question at a jury trial," a "second chance" to make its case at a new trial. I see nothing unfair or unusual in following the same practice in this case.

In my view, this case is controlled by the Court of Appeals' affirmance of this Court's decision in *Thoma v Ronai* (189 AD2d 635 [1993], *affd* 82 NY2d 736 [1993]), which we recently followed in *Lopez v Garcia* (67 AD3d 558 [2009]) and which is followed as binding precedent in the Second Department (*see e.g. Roman v A1 Limousine, Inc.*, 76 AD3d 552, 553 [2010]). In the incident underlying *Thoma*, the defendant's van struck the plaintiff, a pedestrian, as she was crossing an intersection. This Court affirmed the denial of the plaintiff's summary judgment motion, stating:

> "Although defendant did not dispute plaintiff's averment that she was lawfully in the crosswalk when he struck her with his van as he turned left, summary judgment was properly denied since a failure to yield the right of way does not ipso facto settle the question of whether the other party was herself guilty of negligence" (189 AD2d at 635-636).

The Court of Appeals affirmed this Court's order with the following explanation:

> "The submissions to the nisi prius court . . . demonstrate that [plaintiff] may have been negligent in failing to look to her left while crossing the intersection. Plaintiff's concession that she did not observe the vehicle that struck her raises a factual question of her reasonable care. Accordingly, plaintiff did not

satisfy her burden of demonstrating the absence of any material issue of fact and the lower courts correctly denied summary judgment'' (82 NY2d at 737).

While this appeal, unlike *Thoma*, is taken from a judgment after trial, the implication of *Thoma* for this case is that defendant's liability should be retried. The majority's remand for a new trial solely as to comparative negligence yields the same result found unacceptable in *Thoma*—submission of liability and apportionment issues to the factfinder in bits and pieces rather than as an integrated whole. Indeed, in this case, where it is undisputed that a triable issue exists as to defendant's negligence, there is even less justification for trying comparative negligence in isolation than in *Thoma*, where the pretrial record established the defendant's negligence as a matter of law.

The cases the majority relies upon in limiting the new trial to the issue of comparative negligence do not support its refusal to follow *Thoma*. To the extent the majority's position is consistent with *Delemos v White* (173 AD2d 353 [1991]), any precedential authority of *Delemos* on this issue is substantially vitiated by the Court of Appeals' intervening *Thoma* decision. Similarly, I would respectfully decline to follow our decisions in *Strauss v Billig* (78 AD3d 415 [2010], *lv dismissed* 16 NY3d 755 [2011]) and *Tselebis v Ryder Truck Rental, Inc.* (72 AD3d 198 [2010]) on this issue on the ground that *Strauss* and *Tselebis* simply cannot be reconciled with *Thoma*.[3] Finally, in each of our two decisions of this year on which the majority relies, the precise issue of whether the existence of a triable issue as to the plaintiff's comparative fault required a trial on the issue of the defendant's liability was not even presented by the parties for resolution on the appeal.[4]

---

**3.** In fact, the Second Department in *Roman v A1 Limousine (supra)* specifically noted the conflict between *Thoma* and *Tselebis* on this issue and determined to follow the former (76 AD3d at 553).

**4.** An examination of the briefs in *Wright v Riverbay Corp.* (82 AD3d 444 [2011]) shows that the *Wright* defendant, in appealing to this Court, never argued that the trial court's erroneous failure to charge comparative negligence required a new trial on the issue of defendant's liability as well as on the issue of comparative negligence. Given that the *Wright* defendant was not requesting a new trial as to its own liability, the majority is simply incorrect in asserting that *Wright* is "directly on point." In *Gonzalez v ARC Interior Constr.* (83 AD3d 418 [2011]), it was the plaintiff, not the defendants, who took the appeal from an order that, while granting her summary judgment as to liability, directed that the damages trial encompass the issue of comparative fault. Since the *ARC Interior* defendants had not filed a notice of appeal, there

Turning to the matter of the amount of recoverable damages, I concur with the majority insofar as it affirms the trial court's order denying defendant's application for a collateral source offset against the award of economic damages pursuant to CPLR 4545 former (c) (now CPLR 4545 [a]) based on plaintiff's receipt of a line-of-duty accident disability retirement pension equal to three quarters of her last annual salary (*see* Administrative Code of City of NY §§ 13-252, 13-258 [3]).[5] I arrive at this conclusion, however, by a route different from that taken by the majority.

In *Oden v Chemung County Indus. Dev. Agency* (87 NY2d 81 [1995]), the Court of Appeals established the rule that an offset against economic damages under CPLR 4545 is available only where "the collateral source payment represents reimbursement for a particular category of loss that corresponds to a category of loss for which damages were awarded" (*id.* at 84). The majority apparently believes that *Oden*, by itself, dictates the result on the collateral source issue in this case. I disagree. Although the Court of Appeals held that the private-sector disability pension benefits received by the plaintiff in *Oden* could not be set off against the jury's lost-earnings award (but were properly set off against the award for lost ordinary pension benefits), the holding was based on the particular characteristics of that pension. Specifically, the Court of Appeals found that the pension in *Oden* "d[id] not necessarily correspond to any future earning capacity plaintiff might have had" because, inter alia, the plaintiff "would have been free to earn income from his labor in other capacities without loss of his disability retirement pension benefits" (87 NY2d at 88-89).[6]

---

would have been no basis to grant them affirmative relief on this issue even if they had requested it (*see e.g. 61 W. 62 Owners Corp. v CGM EMP LLC*, 16 NY3d 822, 823 n [2011]; *Hecht v City of New York*, 60 NY2d 57, 61-62 [1983]). Accordingly, the statement in *ARC Interior* approving the *Tselebis* holding (83 AD3d at 419) concerned an issue that was not before the Court.

5. I refer to the governing provision by its former designation (CPLR 4545 [c]) because the Legislature specified that the amendment redesignating the provision as CPLR 4545 (a) applies only to cases commenced on or after the amendment's effective date (*see* L 2009, ch 494, part F, § 9). In any event, the amendment did not effect any change in the substantive law applicable to this case.

6. In a case decided about three and a half years after *Oden*, the Court of Appeals noted that the City of New York had raised the issue of "whether a direct correspondence exists between plaintiff's [municipal] accident disability retirement pension and his future lost earnings" so as to justify offsetting the

*Oden* did not set forth any general rule that disability pensions do not compensate for lost earning capacity; did not require a defendant seeking to use disability pension benefits as an offset to present testimony about the subjective intent of the founders or administrators of the pension system; and did not concern a New York City municipal accident disability pension such as the one at issue here.[7] In fact, the police accident disability retirement pension at issue in this case is readily distinguishable from the private-sector disability pension at issue in *Oden* in that plaintiff's police disability pension benefits are required by law to be reduced in the event she actually earns, or manifests the ability to earn, a level of income exceeding a defined maximum amount (*see* Administrative Code § 13-254).[8] Arguably, this provision demonstrates that plaintiff's police accident disability pension is intended to replace the salary she would have earned but for the disability resulting from her service-connected injury.[9]

---

pension benefits against future lost earnings, but found it unnecessary to reach that issue (*Iazzetti v City of New York*, 94 NY2d 183, 191 [1999]).

7. Moreover, a review of the briefs on which the Court of Appeals decided *Oden* reveals that the appellant, which argued for its entitlement to a collateral source offset, said nothing at all about whether the *Oden* disability pension compensated for lost earnings. Rather, the *Oden* appellant devoted its entire argument to the contention (which the Court of Appeals rejected) that a collateral source payment need not match a category of damages awarded by the jury in order to qualify as an offset. Thus, *Oden* casts little light on the kind of showing necessary to establish a correspondence between a collateral source payment and a category of damages included in a jury award.

8. At the collateral source hearing, the expert witness called by defendant gave testimony describing the effect of Administrative Code § 13-254, although he did not cite the statute.

9. That the jury awarded plaintiff damages for lost earnings in an amount exceeding the police salary she lost as a result of the early retirement compelled by her injuries is irrelevant to the question of whether the disability pension should be set off against the portion of her damages based on the loss of her police salary. Plainly, the disability pension benefits (constituting three quarters of plaintiff's last annual police salary) could be used as an offset only against damages for the loss of the police salary. In other words, if an offset were to be applied based on the disability pension, the lost-earnings award would be reduced to the extent of the pension benefits received, or to be received in the future, during the period in which plaintiff would have been earning a police salary but for her disability (i.e., through the date she had planned to retire before she incurred the disability). To the extent plaintiff was awarded damages for the loss of the opportunity to earn overtime compensation in addition to her regular salary, the offset for the pension (which is three quarters of her regular salary) would not reach the portion of the damages award based on the loss of overtime. Moreover, if any component of the disability pension is based on plaintiff's contributions to the pension

Nonetheless, and notwithstanding that *Oden* is not dispositive of the issue as presented in this case, I conclude, on constraint of this Court's decision in *Gonzalez v Iocovello* (249 AD2d 143 [1998], *affd on other grounds* 93 NY2d 539 [1999]), that plaintiff's accident disability pension cannot be offset against her award for lost earnings. In *Iocovello*, we held that the City of New York was not entitled to an offset under CPLR 4545 against a former police officer's lost earnings awards based on his accident disability pension because "the City failed to demonstrate with reasonable certainty that the accident retirement benefits at issue will replace those awards" (249 AD2d at 144).[10] A review of the briefs on which this Court decided *Iocovello* reveals that the City in that case made arguments very similar to those made by defendant herein for reducing the jury's lost earnings award by the amount of the police accident disability pension the plaintiff received (like plaintiff herein) pursuant to Administrative Code § 13-252. Further, in *Iocovello* as in this case, the arguments offered for deeming the pension a replacement for lost earnings were based chiefly on the construction of the statutes establishing the pension (although in this case defendant offered evidence on the way the statutes operate, without citing them). Finally, in *Iocovello*, as here, the plaintiff's argument for not applying an offset was essentially that the defense failed to establish that the purpose of the pension was to replace lost earnings. In sum, *Iocovello* cannot be distinguished from this case insofar as the collateral source issue is concerned.

While I might have reached a different conclusion if we were writing on a clean slate, the fact is that this Court has already spoken to the collateral source issue presented in this case, and a majority of this bench has determined to adhere to that precedent. Still, it cannot be denied that our resolution of this issue in *Iocovello* is subject to reasonable criticism on the ground that it, in effect, bestows on a plaintiff receiving a municipal accident disability pension the windfall of double compensation for a portion of his or her economic loss. Significantly, the Second Department has held that a New York City firefighter's

---

plan, that component of the pension would have to be excluded from the offset.

10. It appears that the collateral source issue was not raised on the appeal to the Court of Appeals in *Iocovello*. Rather, on its appeal to the Court of Appeals, the City chose to focus on its claim that the lawsuit was not authorized by General Municipal Law § 205-e.

line-of-duty accident disability pension benefits (which clearly parallel the instant plaintiff's police pension benefits) "correspond directly with the jury's award for future lost wages" (*Terranova v New York City Tr. Auth.*, 49 AD3d 10, 19 [2007], *lv denied* 11 NY3d 708 [2008]) and therefore qualify as "a collateral source within the meaning of CPLR 4545 (c) that must be set off against the amount of the verdict" (49 AD3d at 20). It is also noteworthy that this Court's resolution of the collateral source issue in *Iocovello* appears to be inconsistent with the result we reached earlier in *Iazzetti v City of New York* (216 AD2d 214 [1995], *appeal after remand* 256 AD2d 140 [1998], *revd on other grounds* 94 NY2d 183 [1999]), where we said that a former city employee's accident disability pension "should be offset against his recovery for postverdict loss of earnings, otherwise he will benefit from precisely the kind of double recovery that the Legislature sought to eliminate" (216 AD2d at 215).[11]

I am at a loss to understand the majority's assertion that, because defendant has not cited the statutes governing plaintiff's police accident disability pension (although defendant did present testimony accurately describing the operation of those statutes), "[w]e cannot assume that these provisions are applicable, and, in the absence of any citation to them by defendant, we decline to speculate." It is undisputed that plaintiff is receiving an accident disability pension from the police pension fund, which, unquestionably, must be authorized by statute. The majority, while it asserts that "it is not clear which pension provisions of the Administrative Code or other statutes may apply here," does not suggest any statutes other than those I have cited that might govern plaintiff's pension. The Court of Appeals itself has recognized the Administrative Code provisions governing pensions of this kind (*see Matter of Starnella v Bratton*, 92 NY2d 836, 838 [1998]), and cases involving such pensions routinely come before this Court (*see e.g. Matter of Kelly v Kelly*, 82 AD3d 544 [2011]). Even if this were a more obscure area of the law, we would be obligated to consider those Administrative Code provisions, because we are *required* to "take judicial notice without request of the . . . public statutes

---

11. As noted, however, our 1995 decision in *Iazzetti* was ultimately reversed, albeit on other grounds, when the case came before the Court of Appeals in 1999. In any event, where there is a conflict between our own precedents, the more recent decision should be followed.

of the United States and of every state . . . and of all local laws" (CPLR 4511 [a]). To the extent any doubt might remain, both the Court of Appeals and this Court have recognized that the Administrative Code of the City of New York is entitled to judicial notice (*see Andy Assoc. v Bankers Trust Co.*, 49 NY2d 13, 23 [1979]; *Howard Stores Corp. v Pope*, 1 NY2d 110, 115 [1956]; *Sweeney v Bruckner Plaza Assoc., LP*, 20 AD3d 371, 372 n [2005]; *Chanler v Manocherian*, 151 AD2d 432, 433 [1989]; *see also* Administrative Code § 1-104 [a] ["All courts shall take judicial notice of all laws contained in the code" of the City of New York]).

Our decision today requires defendant to pay damages for lost earnings for which plaintiff apparently is already receiving (or has received) compensation in the form of an accident disability pension. The statutory framework of New York City's pension system, no less than common sense, points to this conclusion. While I join the majority in affirming the denial of a collateral source offset based on plaintiff's pension, I find it troubling that existing law in this Department leads to this outcome. My concern is heightened by the majority's further decision—from which I dissent—to exclude from the scope of the new trial on comparative fault the issue of defendant's liability and to instruct the new jury that, in considering whether plaintiff was at fault, it should assume at the outset, not as a matter of law but based on a fact-finding made by the previous jury, that defendant was negligent and that its negligence was a proximate cause of the accident. It seems to me that this will have the unintended effect of unfairly "tilting the playing field" against defendant at the new trial by tending to influence the jury to minimize plaintiff's fault or to exonerate her altogether. In my view, fairness dictates that the parties be placed on an even footing at the new trial, meaning that the new jury should be asked to determine anew both defendant's liability and plaintiff's comparative fault.

For the foregoing reasons, I respectfully dissent insofar as the majority excludes the issue of defendant's liability from the scope of the new trial to be held upon remand, and otherwise concur in the majority's disposition of the appeal.

RENWICK and MANZANET-DANIELS, JJ., concur with RICHTER, J.; ANDRIAS, J.P., and FRIEDMAN, J., dissent in part in a separate opinion by FRIEDMAN, J.

Judgment, Supreme Court, Bronx County, entered March 25, 2009, reversed, on the law, without costs, the judgment vacated and the matter remanded for a new trial limited to the issue of plaintiff's comparative negligence.