Andino v Mills (2018 NY Slip Op 04273)

Andino v Mills

2018 NY Slip Op 04273 [31 NY3d 553]

June 12, 2018

Rivera, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, September 19, 2018

[*1]

Niurka Andino, Respondent-Appellant,
v
Ronald Mills et al., Appellants-Respondents. (And a Third-Party Action.)

Argued April 24, 2018; decided June 12, 2018

Andino v Mills, 135 AD3d 407, modified.

{**31 NY3d at 555} OPINION OF THE COURT

Rivera, J.

The common question presented in these cross appeals is whether a retired New York City police officer's accident disability retirement (ADR) benefits are a collateral source that a court must offset against the injured retiree's jury award for future lost earnings and pension. We hold that ADR benefits{**31 NY3d at 556} operate to replace earnings during the period when the retiree could have been employed, absent the disabling injury, and then serve as pension allotments, and so a court must offset a retiree's projected ADR benefits against the jury award for both categories of economic loss.
I.
Plaintiff Niurka Andino is a retired police officer who was injured on duty while riding in a police car that collided with a vehicle owned by defendant New York City Transit Authority (NYCTA) and operated by NYCTA employee defendant Ronald Mills. The jury in Andino's personal injury action found Mills 100% responsible for the accident and attached no liability to the officer driving the police car. The jury held for Andino and awarded her a set amount for past and future lost earnings, past and future pain and suffering, future medical expenses, and future loss [*2]of pension. By stipulation, the parties later agreed to set the period for future lost earnings at 19.24 years and future lost pension at 17.7 years.[FN1]
Defendants moved to offset the jury award pursuant to CPLR 4545, which permits a court to find that certain awarded damages were or will, with reasonable certainty, be replaced or indemnified from a collateral source. After a hearing, Supreme Court denied the motion, concluding that defendants failed to establish a sufficient nexus between Andino's lost earnings and pension and her projected ADR benefits, based on its understanding of this Court's holding in Oden v Chemung County Indus. Dev. Agency (87 NY2d 81 [1995]) and the Appellate Division's application of Oden in Johnson v New York City Tr. Auth. (88 AD3d 321 [2011]) that there must be a direct match between the jury's damages award and the collateral source.
The Appellate Division modified on the law and granted defendants' motion to offset the award for future pension benefits by the total amount of Andino's projected ADR benefits, thus reducing these damages to zero, and otherwise affirmed Supreme Court's denial of an offset for Andino's future lost earnings (see 135 AD3d 407, 408-409 [1st Dept 2016]). The Appellate Division modified on the facts to vacate the award for future pain and suffering and ordered a new trial on those damages, unless Andino stipulated to a reduced award. The{**31 NY3d at 557} Appellate Division subsequently granted Mills, NYCTA, and Andino leave to appeal from an amended judgment entered after the parties stipulated to a reduced award (2017 NY Slip Op 70028[U] [1st Dept 2017]). This appeal brings up for review the prior order which affirmed as modified Supreme Court's judgment.
II.
A.
At the time Andino filed her personal injury action the applicable version of CPLR 4545 provided, in relevant part, that
"[i]n any action brought to recover damages for personal injury . . . where the plaintiff seeks to recover for the cost of medical care, . . . loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source [with some exceptions] . . . . If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding, minus an amount equal to the premiums paid by the plaintiff for such benefits for the two-year period immediately preceding the accrual of such action and minus an amount equal to the projected future cost to the plaintiff of maintaining such benefits" (former CPLR 4545 [c]).[FN2] 
The parties dispute whether ADR benefits are a collateral source for purposes of CPLR 4545 that replaces the jury's award for Andino's future lost earnings and pension.
[*3]Mills and NYCTA argue that, when a police officer retires due to an on-the-job injury that leaves the officer disabled, the ADR benefits allotted to that officer for those years when the{**31 NY3d at 558} officer could have been working, if not for the disability, operate as lost earnings. Once the retired officer reaches the age for regular retirement from service, absent the retirement-inducing injury, ADR benefits serve as a pension. For her part, Andino argues that there is no direct correspondence between her ADR benefits and the categories of economic loss awarded by the jury. She further contends that ADR displaces ordinary disability retirement (ODR), and the higher amount of ADR benefits as compared with ODR allotments is paid as a reward for services previously rendered. In other words, the premium in ADR benefits as compared to ODR benefits is neither "earnings" nor "pension" but paid in gratitude for past services.
The statutory and regulatory scheme governing ADR benefits, and the text and legislative intent of CPLR 4545, as interpreted by this Court in Oden, provide the basis for our conclusion that ADR benefits operate sequentially as payment for future lost earnings and pension benefits. Accordingly, on a motion pursuant to CPLR 4545, a court must apply ADR benefits, dollar-for-dollar, to offset the jury award for future lost earnings during the period they represent lost earnings, and future lost pension during the period they represent lost pension.
B.
We begin our analysis with the legal framework establishing ADR benefits as an alternative form of statutory compensation for certain New York City police officers injured in the line of duty. Unlike the majority of other employees, New York City police officers who stop working as the result of an on-the-job injury are not eligible for benefits under the Workers' Compensation Law (see Matter of Ryan v City of New York, 228 NY 16, 20 [1920]).[FN3] Instead, such officers are eligible to receive ADR benefits when they suffer an accidental work-related injury that renders them "incapacitated for the performance of city-service" as certified by the Medical Board of the Police Pension Fund to the Fund's Board of Trustees and are subsequently retired as a result (Administrative Code of City of NY § 13-252). Benefits are distributed to the officer immediately upon cessation of salary and commencement of the officer's retirement, at an annual amount of 75% of the retiree's final average{**31 NY3d at 559} salary as defined by law (see id. § 13-258 [3] [setting the main component of ADR benefits at 75% of an employee's final average salary]; Retirement and Social Security Law § 443 [defining "final average salary"]).[FN4]
ADR benefits are lifetime payments (see Administrative Code § 13-261). However, until an ADR recipient reaches what would have been the first year at which the recipient could have retired in the absence of the disabling work-related injury, the Board may require the recipient to undergo an annual medical examination to certify whether, as a result of the ADR recipient's incapacitation, the recipient is unable to engage in "a gainful occupation" (see id. § 13-254 [a]). If the Board determines that the recipient is, in fact, capable of "gainful occupation," the recipient is certified to the appropriate civil service commission for state or municipal employment and placed on the eligible preferred list of candidates suitable for such work (id.). If the recipient is or becomes remuneratively employed or is offered City service from the list, ADR benefits may be reduced if the combination of the recipient's ADR benefits and actual or potential income exceeds a statutorily defined cap (id.).
Thus, ADR benefits paid during the period prior to when the recipient would have been eligible for a service retirement—which the legislature has marked at 20 years in City service (see id. § 13-247)—are subject to reduction by amounts earned or earning capacity, above a statutory maximum of permissible income. In other words, if the recipient earns income, or has an opportunity to earn income through some other City service, and that actual or [*4]potential income exceeds the maximum income allowed, ADR benefits are reduced by that amount (id. § 13-254 [a]). This statutory scheme ensures that the recipient's actual or potential income approximates the amount the recipient would have earned in service, meaning ADR benefits replace future lost earnings.[FN5]
{**31 NY3d at 560}However, once the recipient's tenure reaches the point at which, but for the injury, the recipient would have become eligible for a regular service pension, ADR benefits are no longer subject to reduction based on actual or potential employment income. The recipient is then entitled to unreduced ADR benefits equal to 75% of the recipient's final average salary (see id. §§ 13-254, 13-258). Notably, a recipient who is able may work for pay without fear that the ADR allotment will be downwardly affected. Thus, at this point, the ADR benefits no longer operate as salary but instead function as a pension for services rendered, which is not subject to outside income limitations.
Since ADR replaces earnings and pension, it is a collateral source within the meaning of CPLR 4545 that a court must set off against both, representing the category of economic loss in which ADR is allocated sequentially. So, for example, if ADR benefits operate as salary for 20 years, they are counted against 20 years of the award for future lost earnings, and then the remainder is applied against the award for lost pension.
III.
Andino argues that this Court's decision in Oden requires a direct correspondence between the item of loss and the collateral disbursement, which is lacking here, and that ADR benefits stand on unique footing as a reward for past services, not to be treated as a collateral source for economic losses. Andino misinterprets Oden and its core principle that a court must look to the nature, not the label, of the compensatory funds in determining whether they are a category of payments that statutorily offset the jury award. Applying that principle here, and with the benefit of our analysis in Oden, we conclude that ADR benefits, as currently defined and structured, fall squarely within the intended categories of collateral sources by which the court "shall reduce the amount of the [jury] award" (CPLR 4545 [a]).
As recognized in Oden, CPLR 4545 is in derogation of the common law, which traditionally prohibited reduction of a personal injury award by the amount of compensation a plaintiff might receive from sources other than the tortfeasor (see 87 NY2d at 85). CPLR 4545 does not place "limitations on {**31 NY3d at 561}the types of economic losses or the types of collateral benefits that the offset is intended to reach . . . . [O]nly those collateral source payments that actually replace a particular category of awarded economic loss may be used to reduce the injured's judgment" (87 NY2d at 87).[FN6]
As the Court explained, the serial amendments that led to the abrogation of the common-law rule were intended to address rising insurance costs, as well as the doctrinal shift in tort law away from punishment and deterrence of wrongdoing toward just compensation (see id. at 87-88). To that end, the ultimate goal of CPLR 4545 is to eliminate duplicative recovery by a plaintiff (id. at 88). For this reason, the legislature intended ADR benefits to be treated as a collateral source of payment for a City officer's economic losses due to injuries incurred in the course of employment. As discussed in an Assembly Rules Committee Memorandum submitted alongside the enactment of the collateral source offset rule, when a jury makes a tort award for a loss reimbursed by the City's payment of disability, "[t]he employee recovers twice for the same injury" (Mem of Assembly Rules Comm, L 1984, ch 701, 1984 Legis Ann at 252). Yet, "[d]ouble compensation for the same injury is unjustifiable by any policy consideration and results in costly injustice to the taxpayer" (id.). The City of New York similarly believed that, when CPLR 4545 was enacted, it would lead to the full offset of ADR against tort damages awards. As the Mayor explained to the Governor, in a letter urging the rule's enactment:
"Currently a limited number of State and municipal employees . . . are not covered under the Workers' Compensation Law. Many of these employees have generous sick leave and accident disability retirement allowances which provide compensation for injuries incurred in the course of their employment. Since they are not covered under the Worker's{**31 NY3d at 562} Compensation Law they also may bring actions against the public employer for these injuries . . . . The employee recovers twice from the public treasury for the same injury. . . .
"The enactment [of CPLR 4545] will prevent a public employee from being compensated twice out of the public treasury for the same injury for permitting the court to deduct the compensation provided by the public employer from the amount awarded by the jury for the same injury" (Letter from Edward I. Koch, Mayor, Bill Jacket, L 1984, ch 701 at 21).
Andino's projected ADR benefits should have been offset against the jury's award of both categories of economic loss at issue here. ADR benefits replace the income Andino would have earned if she did not have to retire early due to her work-related disability-causing injury. Then, once she reaches what would have been her in-service retirement age, the ADR benefits replace the pension she was entitled to at that time.
Contrary to Andino's argument, Oden does not require a direct match between the jury's damages award and the collateral source in the sense that there must be an exact dollar equivalence, but only that the collateral source replace a category of loss reflected in the jury award. A "reduction is authorized only when the collateral source payment represents reimbursement for a particular category of loss that corresponds to a category of loss for which damages were awarded" (Oden, 87 NY2d at 84). Here, during that period of time when Andino would have been in service, the ADR benefits are payments to bring her wages to the amount she would have earned if she had still been working, but for the injury that caused her disability. If ADR benefits during this period were meant only as a pension, meaning payments earned based on years in service which are then distributed upon retirement from work (see Administrative Code § 13-214 [9] [" 'Pension' shall mean payments for life derived from appropriations made by the city as provided in this subchapter"]), they would not be subject to possible reduction in those cases when the retiree is able to be gainfully employed within the meaning of Administrative Code § 13-254 (a). The Court's decision in Oden thus supports the offset here.
The specific facts of Oden explain why that case resulted in a different disposition than is called for presently. In Oden, the{**31 NY3d at 563} plaintiff was an ironworker injured on the job by a falling steel column (see 87 NY2d at 84). The Court held that his private sector retirement pension benefits could not offset the jury's award for his future lost earnings [*5]because the pension allotments did "not necessarily correspond to any future earning capacity plaintiff might have had," as the "plaintiff would have been free to earn income from his labor in other capacities without loss of his disability retirement pension benefits" (id. at 88-89). In contrast, ADR benefits are subject to reduction if the retiree is found to be capable of gainful employment and earns an income in excess of the statutory maximum. Andino's reliance on Oden is therefore misplaced. Here, unlike the private sector plaintiff in Oden, ADR benefits allocated to Andino during the period when she would have been earning an income in service would, without an offset, be duplicative of the jury award for that very same income.
Andino's alternative argument that ADR benefits are a "reward" for the retiree's service which may not be offset against a jury award is unpersuasive. First, there is no support in the Administrative Code or CPLR 4545 or any available legislative history to treat ADR benefits as a category on its own, exempt from mandatory offset. Indeed, Andino's suggestion is at odds with language in the documents submitted when the collateral offset rule was enacted stating that ADR benefits "may not be regarded as a payment for an employee's past service" (Mem of Assembly Rules Comm, L 1984, ch 701, 1984 Legis Ann at 252). Second, even if the legislature sought to reward service members like Andino, who suffer an injury in the line of duty, that would not change the classification of ADR benefits as a replacement for lost earnings and pension allowances. There is no legal justification for treating a portion of ADR benefits as a reward based on the 25% differential between ODR and ADR benefits, as Andino argues. CPLR 4545 anticipates a dollar-for-dollar offset. That offset is based on the category of reimbursement, not on a stratification of the collateral source total amount.
IV.
Since Andino's ADR benefits work as earnings and then as a pension, they should be applied against the future lost earnings award, during that period they represent lost earnings, and then against the lost pension benefits award, during that period they represent lost pension benefits. Under the particular{**31 NY3d at 564} facts of this case, the parties stipulated to 19.24 years of lost earnings followed by 17.7 years of lost pension. The ADR benefits should thus be offset in that fraction against those awards—that is, the first 19.24 years of ADR benefits are offset against future lost earnings, and the remaining 17.7 years of ADR benefits are offset against future lost pension.[FN7]
The Appellate Division erroneously held that ADR benefits could not be offset against lost earnings, and then incorrectly applied the entire amount of Andino's projected ADR benefits against the future lost pension. Recalculation of the offset to future lost earnings and pension is therefore warranted. Accordingly, the judgment appealed from and the Appellate Division order brought up for review should be modified, without costs, by remitting the case to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.

Wilson, J. (dissenting). The majority's decision suffers from two basic flaws. First, it repudiates our careful decision in Oden v Chemung County Indus. Dev. Agency (87 NY2d 81, 84 [1995]) by claiming that "a particular category of loss" may actually mean two or more categories of losses (emphasis added). Here, the majority's analysis depends on accident disability retirement (ADR) benefits serving as a substitute for two very different jury awards: lost wages and lost pension. Second, allowing ADR benefits to offset both wages and pension may leave injured plaintiffs undercompensated for the full range of losses they have suffered, which is inconsistent with the majority's stated objectives.
I.
As the majority notes, under the common law, a person who tortiously injured a victim was required to pay the full amount of losses incurred by that victim, even if the victim would also{**31 NY3d at 565} receive payments from employers or through medical or other insurance policies inuring to the victim's benefit (majority op at 
560-561). The legislature progressively cut back on the common-law rule through CPLR 4545, first enacted in 1984, and amended various times since then.
Because each of the successive statutory enactments were curtailments of the common-law rule that made tortfeasors wholly responsible, CPLR 4545 (c) "is to be construed in the narrowest sense that its words and underlying purposes permit, since the 'rules of the common law must be held no further abrogated than the clear import of the language used in the statute absolutely requires' " (Oden, 87 NY2d at 86). In Oden we did so; we interpreted CPLR 4545 (c) as narrowly as possible, authorizing a reduction "only when the collateral source payment represents reimbursement for a particular category of loss that corresponds to a category of loss for which damages were awarded" (id. at 84 [emphasis added]). We explicitly rejected the argument that "the economic loss portion of an award should be reduced by the proceeds from any collateral source" (id.).
The trial court in Oden reduced the plaintiff's award for future economic loss ($146,000) by $141,330, the value of the disability retirement benefits that plaintiff was estimated to receive for the remainder of his life. On appeal, we rejected the trial court's holding that the disability benefits could be applied to offset the award for loss of future earnings—which the majority now accepts—and held instead that disability retirement benefits are "paid in lieu of ordinary pension benefits" (id. at 88-89).
As a matter of stare decisis, Oden should control this case. We have already held that the requisite narrow interpretation of CPLR 4545 (c) meant that a collateral source may only correspond to a particular category of loss. That is, ADR benefits cannot transmute from lost earnings for a set of years, and then to lost pension for an additional set of years. Here, as we held in Oden, disability retirement benefits correspond to ordinary pension benefits.
That proposition is not merely dictated by our precedent and rules of statutory interpretation, but also makes sense. Crucially—and plainly—lost earnings, in the form of wages or a salary, are not equal to, or treated the same, [*6]as benefits. "Wage" is defined as "[p]ayment for labor or services, usu[ally] based on time worked or quantity produced" (Black's Law Dictionary {**31 NY3d at 566}[10th ed 2014], wage). "Salary" is "[a]n agreed compensation for services—esp[ecially] professional or semiprofessional services—usu[ally] paid at regular intervals on a yearly basis, as distinguished from an hourly basis" (id., salary). New York statutory law makes a clear distinction between wages and pension (see Retirement and Social Security Law § 302 ["22. 'Pension.' The annual allowance for life, payable in monthly installments, derived from contributions made to the pension accumulation fund pursuant to this article"; "2. 'Annual compensation.' a. The salary or wages annually earnable by a member, including maintenance, or any allowance in lieu thereof, received by the member"]). A pension is what you receive when you are no longer providing services to your employer. Likewise, ADR benefits cannot be received when you are providing services to your employer; they are, like pension benefits, what you receive when you are no longer providing services. ADR benefits, therefore, neatly correspond to the category of pension benefits, not to the category of wages. In Bransten v State of New York we held that benefits, such as employer contributions to health insurance, were so distinct from salary as to not qualify as part of a judge's "compensation" (30 NY3d 434, 437 [2017]).
Further, as we said in Oden, whether a sum qualifies as an offset does not depend on its amount, but upon the category to which it corresponds. Thus, even if Ms. Andino's ADR benefits, which are not subject to taxes, equal or exceed what Ms. Andino would have earned (after taxes) from her police salary, that is irrelevant to whether the categories correspond so that an offset is allowable. Likewise, whether ADR benefits are roughly equal or vastly different in amount from the lost pension benefits is irrelevant to their use as an offset. Here, the ADR benefits offset Ms. Andino's entire lost pension award; any surplus cannot be used to offset another category.
The majority says that if Ms. Andino's ADR benefits offset only her jury award for lost pension, then she would receive duplicative payments (majority op at 
563). The defendant in Oden argued that no duplicative recovery was permissible; the trial court adopted that position and we rejected it. In Oden, we acknowledged that, because disability pension benefits could not be used as an offset against both wages and pension, the plaintiff there would receive some duplicative recovery. Indeed, a necessary consequence of our canon requiring narrow construction of statutes in derogation of the common law is{**31 NY3d at 567} that the common-law scheme, which encouraged double recovery, will be changed as little as possible.
The majority claims today's result will inure to the benefit of taxpayers (majority op at 
561). That is irrelevant, and largely untrue. In this case, because a public employee injured another public employee, the taxpayers would bear the burden of any duplicative recovery. If, instead, a drunk or speeding driver of a private vehicle injures a police officer, the tortfeasor and the tortfeasor's insurer—not the taxpayers—benefit from the majority's generous offset. Unless today's decision is limited to cases in which the victim and tortfeasor are both public employees, public employers providing generous ADR benefits are, in effect, providing those benefits to the tortfeasor and its private insurer.
II.
Even if ADR benefits can serve as an offset for two distinctly different categories of losses, the majority makes a second error by determining that Ms. Andino's award for lost future earnings should be offset by 19.24 years of ADR benefits. Here, the verdict sheet asked the jury to determine, separately for each category of loss, the number of years over which that loss would occur. The jury selected 37 years for both lost wages and lost pension. The parties thereafter stipulated that the periods would be 19.24 years for lost wages, and 17.7 years for lost pension, [*7]apparently breaking up the 37 years determined by the jury into two separate periods.[FN*] That stipulation was made before the hearing on offsets and does not appear to have been intended by the parties to have any bearing on offsets.
The parties agree it is common for police officers to retire and obtain other full-time employment while receiving pension benefits. On the record here, but for the accident Ms. Andino would have been eligible to retire with a full pension three years after the jury verdict. From that point on,
"it is undisputed that, notwithstanding [her eventual] retirement as a[ ] [police officer], plaintiff would have been free to earn income from h[er] labor in other capacities without loss of h[er] disability{**31 NY3d at 568} retirement pension benefits. Thus, it cannot be said that the disability pension benefits plaintiff expects to receive are duplicative of the award [s]he received for lost future earnings" (Oden, 87 NY2d at 88-89).
As in Oden, Ms. Andino would have been free to earn income, after retirement, in addition to her pension benefits, without any reduction of those benefits. Using the ADR benefits as an offset against both her wages and her pension "confer[s] an undeserved windfall on tort defendants and their insurers by permitting them to obtain a credit for collateral source payments that do not correspond to the items of economic loss that they are being called upon to reimburse" (id. at 88). Receipt of her projected salary for 19 years, without any offsets, is a surrogate for both the wages she would have received while employed as a police officer and the wages she would have received from other employment after her retirement from the force.
The majority quotes the above language from Oden, but fails to acknowledge that, after her 20th year of service, or three years following the judgment, just like the plaintiff in Oden, Ms. Andino's ADR benefits would not be subject to reduction and had she not been injured she could have held a private sector job and collected her pension benefits. The majority's position boils down to the following: New York City provides such generous ADR benefits (amounting to the after-tax equivalent of an officer's wages and exceeding the amount of an officer's pension benefits) that defendants who tortiously injure officers should pay little or nothing. That position does not account for the commonly-exercised ability of officers to retire after 20 years of service, receive a pension, and also work at a new job.
Both flaws are incompatible with Oden and with our rule requiring narrow interpretation of statutes in derogation of the common law. Accordingly, I dissent.
Chief Judge DiFiore and Judges Stein, Garcia and Feinman concur; Judge Wilson dissents in an opinion in which Judge Fahey concurs.
Judgment appealed from, and Appellate Division order brought up for review, modified, without costs, by remitting the case to Supreme Court, Bronx County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.

Footnotes

Footnote 1:The parties also stipulated to more exact figures that reduced the awards for past and future loss of earnings, as well as future loss of pension.

Footnote 2:In 2009, the legislature amended and relettered CPLR 4545 (c) as CPLR 4545 (a) (L 2009, ch 494, § 1, part F, § 2). It made only two changes to the statute: the first, an edit for readability, the second, the addition of two sentences clarifying the process a court should follow to apply a collateral source deduction. The language quoted in the text of this writing is identical and unchanged across both versions. Consequently, our analysis would be the same under the current version of CPLR 4545.

Footnote 3:New York City firefighters and sanitation workers are similarly not covered by worker's compensation (see Workers' Compensation Law § 3 [1] [Group 17]; see also Martin Minkowitz, New York Workers' Compensation § 2:5 [2d ed 27 West's NY Prac Series]).

Footnote 4:By contrast with ADR, comparable ODR benefits are 50% of an employee's final average salary (see Administrative Code § 13-257 [3]). Similarly, the standard pension for police officers who retire after 20 years of service is generally 50% of their final average salary (see id. § 13-255 [1]).

Footnote 5:The dissent argues that ADR benefits cannot be considered earnings, since they can only be received when a recipient is no longer providing services to an employer (see dissenting op at 
565-566). Indeed, the statutory scheme ensures that ADR benefits are provided in lieu of salary. It is for this reason that they substitute for earnings. This makes them wholly unlike other benefits that may be provided alongside salary, such as health insurance (cf. dissenting op at 
566).

Footnote 6:The dissent misinterprets this line in Oden to limit a collateral source payment to offsetting a single category of jury award (see dissenting op at 
564). Oden stands for no such proposition. In Oden itself, as discussed below, the Court concluded that the private sector retirement benefits at issue could offset only one category of jury award—lost pension—because that was the only category of award the benefits actually replaced. Here, the ADR benefits replace two different categories of jury award. We agree with the dissent that, "[a]s a matter of stare decisis, Oden should control" (dissenting op at 
565), which means that Oden's analysis applies, but not necessarily its outcome given the different factual posture of this case (see infra at 
562-563).

Footnote 7:The dissent correctly observes that New York City police officers may "retire after 20 years of service, receive a pension, and also work at a new job" (dissenting op at 
568). Here, however, Andino's own expert calculated her future lost earnings award on the assumption that she would remain employed as a police officer for an additional 19.24 years, and the parties subsequently accepted that calculation for that award by stipulation. In any case, when Andino accumulates the years of service at which she could have otherwise retired—approximately three years following the judgment—she will of course be eligible to earn outside income without a reduction in her ADR benefits.

Footnote *:There is no necessary correspondence between the period of years over which a plaintiff's losses are deemed to have occurred and the period for which an offset may occur. For example, a tort plaintiff may have privately purchased disability insurance with a 10-year cap, and a jury may determine she suffered 20 years of lost wages, but the terms of the insurance—not the length of time determined by the jury—would determine the period of the offset.