Hedges v Planned Sec. Serv. Inc. (2021 NY Slip Op 00117)





Hedges v Planned Sec. Serv. Inc.


2021 NY Slip Op 00117


Decided on January 12, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 12, 2021

Before: Kapnick, J.P., Mazzarelli, Singh, Kennedy, JJ. 


Index No. 101854/12 Appeal No. 12660&M-3456 Case No. 2019-03524 

[*1]Michael Hedges etc., et al., Plaintiffs-Respondents,
v
Planned Security Service Inc., Defendant-Respondent-Appellant, Tiago Holding, LLC, et al., Defendants-Appellants-Respondents, Target Corporation, et al., Defendants. The City of New York and New York City Housing Authority, Amici Curiae. New York City Transit Authority, Amici Curiae. Turner Construction Company, Skanska USA Building Inc., Gilbane Building Company, Tishman Construction Corporation and The Associated General Contractors of New York State, Amici Curiae. _ Business Council of New York State, Lawsuit Reform Alliance of New York, New York Insurance Association, Inc., Building Trades employers Association, Associated General Contractors of New York State, NFIB Small Business Legal Center, Coalition For Litigation Justice, Inc., American Property Casualty Insurance Association, and National Association of Mutual Insurance Companies, Amici Curiae. _ Defense Association of New York, Inc., Amicus Curiae.


Mauro Lilling Naparty, LLP, Woodbury (Anthony F. DeStefano of counsel), for appellants-respondents.
Kramer, Dillof, Livingston & Moore, New York (Matthew Gaier of counsel), for the Hedges, respondents.
Mischel & Horn, P.C., New York (Scott T. Horn of counsel), for respondent-appellant.
Lawrence Heisler, Brooklyn, for New York City Transit Authority, amicus curiae.
James E. Johnson, Corporation Counsel, New York (Devin Slack of counsel), for The City of New York and New York City Housing Authority, amici curiae.
Cullen and Dykman LLP, New York (Adrienne Yaron of counsel), for Turner Construction Company, Skanska USA Building Inc., Gilbane Building Company, Tishman Construction Corporation and The Associated General Contractors of New York State, amici curiae.
Malaby & Bradley, LLC, New York (Maryellen Connor of counsel), for Business Council of New York State, Lawsuit Reform Alliance of New York, New York Insurance Association, Inc., Building Trades Employers Association, Associated General Contractors of New York State, NFIB Small Business Legal Center, Coalition for Litigation Justice, Inc., American Property Casualty Insurance Association, and National Association of Mutual Insurance Companies, amici curiae.
Andrew Zajac, Jericho, for The Defense Association of New York, Inc., amicus curiae.



Judgment, Supreme Court, New York County (Carmen Victoria St. George, J.), entered July 24, 2019, insofar as appealed from as limited by the briefs, after a jury trial, apportioning liability 65% against defendants Tiago Holdings, LLC (Tiago), Blumenfeld Development Group, Ltd., Forest City Enterprises, Inc., Forest City Ratner Companies, LLC and ERP Management LLC (collectively, Owner Defendants), 25% against defendant Planned Security Service, Inc. (PSS), and 10% against the nonparty tortfeasors, awarding plaintiff Marion Hedges $14.5 million for future pain and suffering and $1.9 million for past and future lost earnings, upon plaintiffs' stipulation to reduce the jury's awards for these damages, and $3,175,500 for a home health aide, and awarding plaintiff Michael Hedges $2 million for past and future loss of services and society, and bringing up for review an order, same court and Justice, entered January 19, 2018, which, inter alia, granted Owner Defendants' motion for summary judgment on their cross claim against PSS for contractual indemnification to the extent of determining that Tiago and ERP were entitled to indemnification of costs incurred in the main action and conditionally granted defendant Target Corporation's (Target) motion for summary judgment on its cross claim against PSS for common-law indemnification, unanimously modified, on the law and the facts, Owner Defendants' motion for summary judgment on their cross claim against PSS granted only to the extent of determining that Tiago and ERP are entitled to contractual indemnification from PSS of the portion of costs incurred in the main action corresponding to the apportionment of fault allotted against PSS, Target's cross claim against PSS for common-law indemnification deemed abandoned, and the matter remanded for a new trial of damages for future pain and suffering unless, within 30 days of entry of this order, plaintiffs stipulate to reduce the award for future pain and suffering from $14.5 million to $10 million, and to entry of an amended judgment in accordance therewith, and otherwise affirmed, without costs.
Appeal from order, same court and Justice, entered April 19, 2019, which denied PSS's motion to renew Owner Defendants' motion as to PSS's contractual duty to indemnify defendants Tiago and ERP, unanimously dismissed, without costs, as subsumed in the appeal from the judgment. Appeal from order, same court and Justice, entered May 9, 2019, which, inter alia, denied Owner Defendants' motion to set aside the verdict, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Plaintiff Marion Hedges was seriously injured and left on the brink of death when two 12-year-old boys threw a shopping cart over the fourth-floor railing of a shopping mall, striking her as she stood at a parking kiosk on the first floor. Owner Defendants are the mall owners, and PSS is the mall security firm.
Owner Defendants were not entitled to a directed verdict [*2]on liability with respect to plaintiffs' claims. The jury could reasonably have concluded based on the evidence presented at trial that the criminal act of youths throwing objects from the upper floors of the mall was foreseeable and constituted a recurring dangerous condition, thus triggering a duty to take some responsive measures (see Jacqueline S. v City of New York, 81 NY2d 288, 294-295 [1993]; Ungruhe v Blake-Riv Realty LLC, 90 AD3d 497 [1st Dept 2011]; see generally Szczerbiak v Pilat, 90 NY2d 553, 556 [1997]).
The jury's determination that Owner Defendants were at comparatively greater fault than PSS was based on a fair interpretation of the evidence (see generally Beecham v New York City Tr. Auth., 54 AD3d 594, 595 [1st Dept 2008]). Evidence was presented that PSS's role was limited to providing security personnel and that it had no authority to make many of the changes suggested by plaintiffs' security expert. However, the jury heard evidence that the Owner Defendants had notice of a recurring hazardous condition at the premises, namely, that youngsters frequented the location and threw various items off the elevated structure. According to witnesses and security log entries, young people threw such items as candy, food, rocks, glass bottles and garbage. Additionally, there was documentary evidence that 20 days before plaintiff's accident, several youths had thrown a shopping cart down the escalator. Yet, according to testimony by one of defendant's managers, the Owner Defendants did not put into place any remedial measures, such as raising the height of the rails, increasing the number of security guards or putting up warning signs, despite having notice of the recurring dangerous condition. Thus, we decline to disturb the jury's findings apportioning liability 65% against Owner Defendants and 25% against defendant PSS.
Contrary to Owner Defendants' argument, an apportionment of fault of 35% to the perpetrators is not supported by the record or the caselaw. Owner Defendants rely on Nash v Port Auth. of N.Y. & N.J. (51 AD3d 337, 353-358 [1st Dept 2008], revd on other grounds 17 NY3d 428 [2011], cert denied 568 US 817 [2012]) in support of this apportionment. However, Nash involved the 1993 premeditated terrorist bombing attack on the World Trade Center. Here, in contrast, the perpetrators were two 12-year-old boys; while their actions were reckless, there was no indication that they executed a premeditated plan aimed at seriously injuring the shoppers below. In any event, their actions are not comparable to an international terrorist conspiracy intended to harm American interests.
PSS's arguments that the indemnification provision in their security service agreement with Tiago and ERP is unenforceable pursuant to General Obligations Law §§ 5-322.1 and 5-325 are either unpreserved or unavailing. The scope of the contractual indemnification obligation is, however, limited to claims "arising out of" the performance of PSS's services [*3](see Suazo v Maple Ridge Assoc., L.L.C., 85 AD3d 459, 461 [1st Dept 2011]). Even if the jury found that PSS was negligent in its patrol duties or in failing to provide additional security personnel, this was just one aspect of the negligence at issue, which also included failures to make structural changes that were indisputably outside the scope of PSS's contractual duties. In determining PSS's relative apportionment of fault, the jury decided what portion of plaintiffs' damages resulted from PSS's performance of its services. Thus, PSS should only be required to indemnify Owner Defendants in an amount corresponding to the apportionment of fault allotted to it, namely 25%.
Any claim by Target (or its successors) for common-law indemnification from PSS is deemed abandoned.
The awards for past and future lost earnings, past and future loss of services and society, and for a home health aide were sufficiently established. However, the award for future pain and suffering deviated materially from what would be reasonable compensation to the extent indicated (see CPLR 5501[c]). Plaintiffs presented proof that Marion's life was significantly affected by her injuries. However, the jury's award of $29 million, reduced to $14.5 million by the trial court, was higher than in any other case cited, including cases involving similarly devastating injuries, thus warranting a reduction (see e.g. Turturro v City of New York, 127 AD3d 732 [2d Dept 2015], affd 28 NY3d 469 [2016] [the trial court reduced the award for future pain and suffering from $15 million to $10 million, which the Second Department further reduced to $7 million, for a plaintiff who suffered a brain injury that permanently diminished his cognitive and mot0r functioning]).
Owner Defendants contend that the award should be reduced so that it is in line with amounts given in other traumatic brain injury (TBI) cases (see e.g. Andino v Mills, 135 AD3d 407 [1st Dept 2016] [awarding $2.7 million], mod on other grounds 31 NY3d 553 [2018]; Godfrey v G.E. Capital Auto Lease, Inc., 89 AD3d 471 [1st Dept 2011] [awarding $2.5 million] lv denied 19 NY3d 816 [2012]). We disagree. The cases cited by Owner Defendants involved severe yet less debilitating brain injuries than the injury suffered by Marion. Here, as a result of the accident, Marion suffered extensive organic brain damage, which is something more than a TBI, with resulting neurological injuries. As explained by her treating neurologist, the accident caused numerous bleeds and resultant lesions throughout Marion's brain, permanent structural brain damage, and actual brain shrinkage or atrophy.
Moreover, Marion nearly died after she was hit with the shopping cart. According to testimony from a physician who happened to be in the mall at the time and came to her aid immediately [*4]after the accident, Marion's heart had stopped, there was blood streaming from her head, she had no pulse, was nonresponsive, and was purplish in color. The physician administered CPR and brought her back to life. Marion today still suffers from and will continue to suffer from a very complex brain injury that has severely diminished her ability to function, both cognitively and physically. She experiences difficulties with her vision, balance, coordination and speech, and suffers from incontinence, an inability to control strong emotions or make decisions on her own, memory loss, and headaches. In essence, Marion is no longer the person she used to be. Thus, an award of $10 million for future pain and suffering is reasonable compensation and supported by the record.
This Court declines the invitation of amici to announce a new rule prohibiting the
practice of anchoring. M-3456 — Michael Hedges v Planned Security Service, Inc. Motion for leave to file an amicus curiae brief, granted. 
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 12, 2021