■ In the Matter of JAMES CARVER, as President of the Police Benevolent Association of The Police Department, County of Nassau, N.Y., Inc., et al., Appellants-Respondents, v NASSAU COUNTY INTERIM FINANCE AUTHORITY et al., Respondents, and COUNTY OF NASSAU et al., Respondents-Appellants. [38 NYS3d 197]—

In a proceeding, inter alia, pursuant to CPLR article 78 to annul and vacate certain resolutions enacted by the Nassau County Interim Finance Authority and to compel compliance with applicable collective bargaining agreements, (1) the petitioners appeal, as limited by their brief, from so much of an order of the Supreme Court, Nassau County (Diamond J.), entered March 14, 2014, as granted those branches of the motion of the Nassau County Interim Finance Authority and its directors/members, and the separate motion of the County of Nassau, Edward Mangano, in his official capacity as County Executive of Nassau County, and George Maragos, in his official capacity as Nassau County Comptroller, which were to dismiss the proceeding pursuant to CPLR 3211 (a) and 7804 (f) insofar as asserted against each of them, and the County of Nassau, Edward Mangano, in his official capacity as County Executive of Nassau County, and George Maragos, in his official capacity as Nassau County Comptroller, cross-appeal from so much of the same order as, in effect, denied that branch of their motion which was to dismiss the proceeding as time-barred, and (2) the petitioners appeal from a judgment of the same court entered May 7, 2014, which, upon the order, in effect, denied the petition and dismissed the proceeding, and the County of Nassau, Edward Mangano, in his official capacity as County Executive of Nassau County, and George Maragos, in his official capacity as Nassau County Comptroller, cross-appeal from so much of the same judgment as, upon the order, in effect, failed to dismiss the proceeding on the ground that it was time-barred.

Ordered that the appeal and cross appeal from the order are dismissed; and it is further,

Ordered that the judgment is affirmed; and it is further,

Ordered that one bill of costs is awarded to the respondents-respondents-appellants.

The appeal and cross appeal from the intermediate order must be dismissed since an intermediate order made in a CPLR article 78 proceeding is not appealable as of right (see CPLR

5701 [b] [1]; *Matter of Smyles v Board of Trustees of Inc. Vil. of Mineola*, 120 AD3d 822 [2014]), and any possibility of taking a direct appeal or cross appeal therefrom terminated with the entry of the judgment in the proceeding (*see Matter of Aho*, 39 NY2d 241, 248 [1976]; *Matter of Westchester County Correction Officers Benevolent Assn., Inc. v County of Westchester*, 71 AD3d 1040 [2010]). The issues raised on the appeal and cross appeal from the order are brought up for review and have been considered on the appeal and cross appeal from the judgment (*see* CPLR 5501 [a] [1]).

In the year 2000, the County of Nassau was in the grips of a fiscal crisis involving a $2.7 billion debt. The rating for County bonds was reduced to only one level above junk status. Debt service accounted for one-quarter of the County's budgeting, and the County was facing insolvency. In response, the State Legislature created the Nassau County Interim Finance Authority (hereinafter NIFA), through legislation known as the NIFA Act, which is codified at Public Authorities Law §§ 3650-3672. NIFA was created as a public benefit corporation to oversee the County's finances (*see* Public Authorities Law §§ 3650-3672). The NIFA Act created three periods of oversight: an initial "interim finance period," an ensuing period of "monitoring and review," and, when triggered by fiscal decline defined in the Act, a "control period" to restore fiscal balance (Public Authorities Law §§ 3667-3669). During the interim finance period, NIFA had the power and responsibility to impose budget discipline upon the County by approving financial plans, which were imposed and extended into 2008. It is undisputed that the interim finance period expired in 2008, and was followed by a period of observational oversight governed primarily by section 3668 of the NIFA Act (*see* Public Authorities Law § 3668). On January 26, 2011, NIFA ordered a control period upon projecting a substantial budget deficit. NIFA's authority to do so, which was challenged by the County in the Supreme Court, Nassau County, was upheld (*see Matter of County of Nassau v Nassau County Interim Fin. Auth.*, 33 Misc 3d 227, 248, 257-258 [Sup Ct, Nassau County 2011]).

During the designated control period which was established in 2011, NIFA imposed successive wage freezes upon County employees pursuant to Public Authorities Law § 3669 (3) (a). First, NIFA passed a resolution on March 24, 2011, imposing a one-year wage freeze on certain county workers (hereinafter wage freeze I). NIFA did so again on March 22, 2012 (hereinafter wage freeze II), and again on March 14, 2013 (hereinafter wage freeze III). On April 1, 2011, the petitioners, comprising

unions representing various members of the Nassau County Police Department (hereinafter collectively the PBA petitioners), commenced an action in the United States District Court for the Eastern District of New York (hereinafter the federal action), challenging wage freeze I under the Contracts Clause of article I of the United States Constitution. On April 22, 2011, the PBA petitioners amended their complaint in the federal action to include, inter alia, a state claim alleging that Public Authorities Law § 3669 (3) (a) authorized NIFA to impose a wage freeze only within control periods ordered during the interim finance period, which expired in 2008, and thus, NIFA was not authorized to impose the subject wage freeze. In related actions, the Nassau County Sheriff's Correction Officers Benevolent Association, Inc., and its president (hereinafter together the SCOBA petitioners), filed their initial federal complaint on June 7, 2011, which was amended on February 27, 2012, March 7, 2013, and July 18, 2013, to include state claims specific to wage freezes I, II, and III. The Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, and two of its officers (hereinafter collectively the CSEA petitioners), filed their initial federal complaint on April 18, 2011, which was similarly amended on March 18, 2013 as to wage freeze I, March 13, 2013 as to wage freeze II, and July 11, 2013 as to wage freeze III. On September 20, 2013, the United States Court of Appeals for the Second Circuit directed the District Court to dismiss all of the state claims on the ground that it had abused its discretion in exercising supplemental jurisdiction over them (*see Carver v Nassau County Interim Fin. Auth.*, 730 F3d 150, 155 [2d Cir 2013]).

In accordance with CPLR 205 (a), the PBA petitioners, the SCOBA petitioners, and the CSEA petitioners commenced separate CPLR article 78 proceedings in the Supreme Court, Nassau County, within six months of the dismissal of the state law claims in the federal actions, by reasserting the aforementioned state claims that NIFA had lacked authority under Public Authorities Law § 3669 (3) (a) to impose the subject wage freezes. In this proceeding commenced by the PBA petitioners, the petition named as respondents the Nassau County Interim Finance Authority and its directors/members (hereinafter collectively the NIFA respondents), and the County of Nassau, Edward Mangano, in his official capacity as County Executive of Nassau County, and George Maragos, in his official capacity as Nassau County Comptroller (hereinafter collectively the County respondents). The Supreme Court, after, in effect, denying those branches of the separate motions of the NIFA respondents and the County respondents which were to

dismiss the proceeding insofar as asserted against each of them as time-barred, ultimately granted on the merits those branches of the motions which were to dismiss the proceeding pursuant to CPLR 3211 (a) and 7804 (f). The court determined that all of the subject wage freezes were authorized under the NIFA Act (*see* Public Authorities Law § 3669 [3]).

Contrary to the County respondents' contention, the Supreme Court properly, in effect, denied that branch of their motion which was to dismiss the proceeding insofar as asserted against them to the extent that it specifically challenged wage freeze II as time-barred. The challenge to wage freeze II was timely, pursuant to CPLR 203 (f) and 217 (1), because the initial federal action was timely commenced within four months of the applicable resolutions dated March 24, 2011. Thus, the wage freeze II claims in the amended complaint in the federal action related back to the initial complaint in that action, as the initial complaint gave notice of the transactions and occurrences to be proved based on the same facts and legal theories (*see* CPLR 203 [f]; *C-Kitchens Assoc., Inc. v Travelers Ins. Cos. [Travelers Ins. Co.]*, 15 AD3d 905 [2005]; *Llama v Mobil Serv. Sta.*, 262 AD2d 457 [1999]; *Curiale v Ardra Ins. Co.*, 223 AD2d 445 [1996]). Moreover, after the state law claims in the federal action were dismissed for lack of supplemental jurisdiction, this proceeding was permissibly and timely commenced within six months thereafter (*see* CPLR 205 [a]; *Ross v Jamaica Hosp. Med. Ctr.*, 122 AD3d 607 [2014]; *Marrero v Crystal Nails*, 114 AD3d 101, 103 [2013]).

As to the merits, the PBA petitioners contend that NIFA was not granted statutory authority to extend the wage freezes beyond the interim finance period, which expired in 2008. For this argument, the PBA petitioners rely on Public Authorities Law § 3669 (3) (a), which provides, in relevant part:

"3. Authorization for wage freeze.

"(a) During a control period, upon a finding by the authority that a wage freeze is essential to the adoption or maintenance of a county budget or a financial plan that is in compliance with this title, the authority, after enactment of a resolution so finding, may declare a fiscal crisis. Upon making such a declaration, the authority shall be empowered to order that all increases in salary or wages of employees of the county and employees of covered organizations which will take effect after the date of the order pursuant to collective bargaining agreements, other analogous contracts or interest arbitration awards, now in existence or hereafter entered into, requiring such salary increases as of any date thereafter are suspended.

Such order may also provide that all increased payments for holiday and vacation differentials, shift differentials, salary adjustments according to plan and step-ups or increments for employees of the county and employees of covered organizations which will take effect after the date of the order pursuant to collective bargaining agreements, other analogous contracts or interest arbitration awards requiring such increased payments as of any date thereafter are, in the same manner, suspended. . . . *The suspensions authorized hereunder shall continue until one year after the date of the order and, to the extent of any determination of the authority that a continuation of such suspensions, to a date specified by the authority, is necessary in order to achieve the objectives of the financial plan, such suspensions shall be continued to the date specified by the authority, which date shall in no event be later than the end of the interim finance period, provided that such suspensions shall terminate with respect to employees who have agreed to a deferral of salary or wage increase upon the certification of the agreement by the authority pursuant to paragraph (b) of this subdivision*" (emphasis added).

To address this argument, we apply familiar principles of statutory construction. "Any statute or regulation . . . must be interpreted and enforced in a reasonable . . . manner in accordance with its manifest intent and purpose" (*Matter of Sabot v Lavine*, 42 NY2d 1068, 1069 [1977]). A statutory interpretation that is "contrary to the dictates of reason or leads to unreasonable results is presumed to be against the legislative intent" (McKinney's Cons Laws of NY, Book 1, Statutes § 143, Comment at 288 [1971 ed]). "[W]hen presented with a question of statutory interpretation, [the court's] primary consideration is to ascertain and give effect to the intention of the Legislature" (*Samiento v World Yacht Inc.*, 10 NY3d 70, 77 [2008] [internal quotation marks omitted]; *see Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]). In that regard, because the clearest indicator of legislative intent is the statutory text, "the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (*Hakimi v Cantwell Landscaping & Design, Inc.*, 50 AD3d 848, 850 [2008] [internal quotation marks omitted]; *Matter of Jansen Ct. Homeowners Assn. v City of New York*, 17 AD3d 588, 589 [2005]). A further fundamental rule of statutory construction when construing statutes under the same legislative act is that the court must "take the entire act into consideration, or look to the act as a whole, and all sections of a law must be read together to determine its fair meaning" (McKinney's Cons Laws of NY, Book 1, Statutes § 97, Comment

at 213 [1971 ed]). In addition, "[a] court should avoid a statutory interpretation rendering the provision meaningless or defeating its apparent purpose" (*Miglino v Bally Total Fitness of Greater N.Y., Inc.*, 92 AD3d 148, 157 [2011] [internal quotation marks omitted], *affd* 20 NY3d 342 [2013]).

Applying these principles to the above-quoted section of the NIFA Act, as well as the NIFA Act's requirement that it "shall be liberally construed to assist the effectuation of the public purposes furthered hereby" (Public Authorities Law § 3672), we find that, contrary to the PBA petitioners' contention, the Supreme Court correctly determined that NIFA was authorized under the NIFA Act to impose the subject wage freezes (*see* Public Authorities Law § 3669 [3]). Public Authorities Law § 3669 (3) expressly provides for NIFA's authority to declare a control period by enacting a resolution finding a fiscal crisis, and upon such finding, order that all increases in salary or wages of county employees be suspended. Control periods may be declared "at any time" (Public Authorities Law § 3669 [1]). Although the PBA petitioners maintain that other language in Public Authorities Law § 3669 (3) confines wage freeze authority to the interim finance period alone, they ignore that wage freeze authority was placed in a statutory section entitled "Control Period" (Public Authorities Law § 3669) and the plain language preceding the use of the term "interim finance period" in that section, by which the legislature clearly and unequivocally conferred wage freeze authority upon NIFA during control periods. The PBA petitioners' reliance upon certain language of Public Authorities Law § 3669 (3) that references the interim finance period is misplaced, as that language is followed by a "provided" qualifier that does not apply here. Further, their construction of section 3669 (3) conflicts with the meaning of the statute as a whole, as well as with the legislature's expressed intent that NIFA be vested with recognized tools for dealing with ongoing fiscal crises. Accordingly, the NIFA respondents and the County respondents established their objections in point of law (*see* CPLR 7804 [f]).

The parties' remaining contentions are without merit.

Accordingly, the Supreme Court properly, in effect, denied the petition and dismissed the proceeding. Dillon, J.P., Chambers, Hall and Duffy, JJ., concur.