Liciaga v New York City Tr. Auth. (2024 NY Slip Op 04257)

Liciaga v New York City Tr. Auth.

2024 NY Slip Op 04257

Decided on August 21, 2024

Appellate Division, Second Department

Ventura, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 21, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
WILLIAM G. FORD
DEBORAH A. DOWLING
LOURDES M. VENTURA, JJ.

2019-13984
2020-00002
2020-00003
 (Index No. 513495/16)

[*1]Robert Liciaga, respondent,
v
New York City Transit Authority, etc., appellant.

APPEAL by the defendant, in an action to recover damages for personal injuries, from (1) an order of the Supreme Court (Peter P. Sweeney, J.), dated October 25, 2019, and entered in Kings County, (2) a judgment of the same court entered December 20, 2019, and (3) an amended judgment of the same court entered December 23, 2019. The order denied that branch of the defendant's motion which was pursuant to CPL 4404(a) to set aside a jury verdict on the issue of liability as contrary to the weight of the evidence or in the interest of justice and for a new trial on the issue of liability, granted that branch of the defendant's motion which was pursuant to CPLR 4404(a) to set aside, as excessive, so much of a jury verdict on the issue of damages as awarded the plaintiff the principal sums of $9,000,000 and $60,000,000, respectively, for past and future pain and suffering and for a new trial on the issue of those damages only to the extent of directing a new trial on the issue of damages for past and future pain and suffering unless the plaintiff stipulated to reduce the awards for past and future pain and suffering to the principal sums of $4,000,000 and $12,000,000, respectively, in effect, denied that branch of the defendant's motion which was pursuant to CPL 4404(a) to set aside, as excessive, so much of the jury verdict on the issue of damages as awarded the plaintiff the principal sum of $40,000,000 for future medical expenses and for a new trial on the issue of those damages, and denied that branch of the defendant's motion which was pursuant to CPLR 4545 for a collateral source hearing. The amended judgment, insofar as appealed from, upon the jury verdicts on the issues of liability and damages, upon the order dated October 25, 2019, and upon a reduction in the amount of interest and costs contained in the judgment, is in favor of the plaintiff and against the defendant in the total sum of $69,707,337.07.

Greenberg Traurig, LLP, New York, NY (Carmen Ciparick, Robert J. Kirshenberg, and Andrea N. Chidyllo of counsel), for appellant.
Block O'Toole & Murphy, New York, NY (David Scher and Christina R. Mercado of counsel), for respondent.

VENTURA, J.

OPINION & ORDER
This appeal presents a question of first impression in New York involving the effect of the Patient Protection and Affordable Care Act on collateral source offsets in personal injury actions, to wit: whether a defendant may be entitled to a collateral source hearing pursuant to CPLR 4545 for the purpose of establishing that an uninsured plaintiff's future medical expenses will, with reasonable certainty, be covered in part by a private health insurance policy, as long as the plaintiff takes the steps necessary to procure the policy. Among other reasons, since providing a defendant [*2]an offset under such circumstances would serve the "ultimate goal of CPLR 4545 to eliminate duplicate recovery by a plaintiff" (Andino v Mills, 31 NY3d 553, 561), we conclude that the defendant was entitled to a hearing pursuant to CPLR 4545 to demonstrate the extent, if any, to which the plaintiff's future medical expenses would be reduced by available insurance coverage. We express no opinion, however, about the appropriate outcome following the hearing.
For the reasons set forth below, we otherwise reject the defendant's various contentions in favor of reversal. Therefore, we modify the amended judgment by deleting the award of damages for the plaintiff's future medical expenses and, inter alia, remit this matter to the Supreme Court, Kings County, for a collateral source hearing on the issue of those expenses, with entry of an appropriate second amended judgment thereafter.
I. Background of the Action
In August 2016, the plaintiff commenced this action to recover damages for personal injuries he alleged he sustained in an accident that occurred approximately four months earlier in Brooklyn. At the time of the accident, the defendant was conducting a track replacement project on an elevated subway line, which, among other things, required workers to remove old railroad ties and lower them to a designated "drop zone" area on the ground below. The plaintiff, then 23 years old, was riding a bicycle through the drop zone, which was not barricaded, when he was struck on the back by a railroad tie. The plaintiff alleged that, as a result, he sustained, inter alia, multiple fractured vertebrae in his thoracic spine and a severed spinal cord, requiring emergency surgery. According to the plaintiff, he was rendered permanently paralyzed below the T7 level due to the injuries he sustained in the accident.
After a trial on the issue of liability, a jury found that the defendant was negligent on the date of the accident, that the defendant's negligence was a substantial factor in causing the plaintiff's injuries, and that the plaintiff was not negligent in the happening of the accident. Following a trial on the issue of damages, the jury awarded the plaintiff the principal sums of $9,000,000 for past pain and suffering and $60,000,000 for future pain and suffering for 48 years, as well as $1,174,972.38 for past medical expenses and $40,000,000 for future medical expenses.
Thereafter, the defendant moved pursuant to CPLR 4404(a) to set aside the jury verdict on the issue of liability as contrary to the weight of the evidence and in the interest of justice and for a new trial on the issue of liability, or to set aside, as excessive, so much of the verdict on the issue of damages as awarded the plaintiff the principal sums of $9,000,000 and $60,000,000, respectively, for past and future pain and suffering and the principal sum of $40,000,000 for future medical expenses and for a new trial on the issue of those damages, or, if a new trial were denied, for a collateral source hearing pursuant to CPLR 4545 on the issue of future medical expenses. In support of that branch of the defendant's motion which was for a collateral source hearing pursuant to CPLR 4545 on the issue of future medical expenses, the defendant asserted that the plaintiff, who was uninsured, was eligible for insurance coverage through the Patient Protection and Affordable Care Act (42 USC § 18001 et seq., as added by Pub L 111-148, 124 US Stat 119; hereinafter the ACA; see 26 USC 5000A), which would offset the costs of his future medical expenses.
By order dated October 25, 2019, the Supreme Court denied that branch of the defendant's motion which was pursuant to CPLR 4404(a) to set aside the verdict on the issue of liability as contrary to the weight of the evidence and in the interest of justice and for a new trial on the issue of liability, in effect, denied that branch of the defendant's motion which was pursuant to CPLR 4404(a) to set aside, as excessive, so much of the verdict as awarded the plaintiff the principal sum of $40,000,000 for future medical expenses and for a new trial on the issue of those damages, and denied that branch of the defendant's motion which was pursuant to CPLR 4545 for a collateral source hearing. However, the court granted that branch of the defendant's motion which was pursuant to CPLR 4404(a) to set aside the verdict on the issue of damages for past and future pain and suffering, but only to the extent of directing a new trial on the issue of those damages unless the plaintiff stipulated to reduce the awards for past and future pain and suffering from the principal sums of $9,000,000 and $60,000,000, respectively, to the principal sums of $4,000,000 and $12,000,000, respectively. The plaintiff stipulated to reduce the awards for past and future pain and suffering consistent with the court's determination. The court subsequently entered a judgment, and thereafter an amended judgment, in favor of the plaintiff and against the defendant. The defendant appeals from the order, the judgment, and the amended judgment.
II. The Defendant's Other Contentions
A. Nonhearsay Statement to "Go Ahead"
Contrary to the defendant's assertion, the Supreme Court properly allowed the plaintiff to testify that an unidentified worker told him to "go ahead" right before he rode his bicycle into the drop zone. "The mere utterance of a statement, without regard to its truth, may indicate circumstantially the state of mind of the hearer or of the declarant" (People v Hyland, 168 AD3d 1096, 1097 [alteration and internal quotation marks omitted]). The plaintiff's testimony was offered as proof of his state of mind at the time of the accident, rather than for its truth (see id.; Taino v City of Yonkers, 43 AD3d 401, 403; Tri-State Consumer Ins. Co. v Yaskin, 304 AD2d 560, 561). "Additionally, the court properly instructed the jury on the limited purpose of this testimony" (People v Huertas, 186 AD3d 731, 733, affd 38 NY3d 1139; see generally Kane v Triborough Bridge & Tunnel Auth., 8 AD3d 239, 242), and "[t]he jury is presumed to have followed the court's instructions" (Brown v Speaker, 66 AD3d 422, 423).
B. The Weight of the Evidence
The jury's verdict on the issue of liability was not contrary to the weight of the evidence. "A jury verdict should not be set aside as against the weight of the evidence unless the jury could not have reached the verdict by any fair interpretation of the evidence. Where the verdict can be reconciled with a reasonable view of the evidence, the successful party is entitled to the presumption that the jury adopted that view" (Lara v Arevalo, 205 AD3d 700, 702 [citation and internal quotation marks omitted]; see Quijano v American Tr. Ins. Co., 155 AD3d 981, 983). Contrary to the defendant's contention, the evidence did not so preponderate in its favor that a verdict finding it solely at fault for the accident could not have been reached by any fair interpretation of the evidence (see Hendy v Watts, 190 AD3d 834, 835; Nassour v City of New York, 35 AD3d 556, 557). The jury also "had the opportunity to observe the witnesses and the evidence," and "[i]ts resolution is entitled to deference" (Hendy v Watts, 190 AD3d at 835 [internal quotation marks omitted]; see Acosta v City of New York, 153 AD3d 765, 766).
C. Deprivation of a Fair Trial
The defendant's contention that it was deprived of a fair trial due to certain comments made by the plaintiff's attorney during his summation is without merit. "In a civil trial, trial counsel is afforded wide latitude in presenting arguments to a jury in summation" (Acosta v City of New York, 153 AD3d at 767 [internal quotation marks omitted]). The plaintiff's attorney's statements regarding the defendant's failure to take responsibility for the accident "were fair comment on the evidence and were made in direct response to . . . the summation by [the] defendant['s] attorney" (Koziol v Wright, 26 AD3d 793, 794; see Wilson v Finkelstein, 226 AD3d 950, 953-954).
D. Awards of Damages
Pursuant to CPLR 5501(c), "[t]he amount of damages to be awarded to a plaintiff for personal injuries is a question for the jury, and its determination will not be disturbed unless the award deviates materially from what would be reasonable compensation" (Wynter v Transdev Servs., Inc., 207 AD3d 785, 787). "Since the inherently subjective nature of noneconomic awards cannot produce mathematically precise results, the 'reasonableness' of compensation must be measured against the relevant precedent of comparable cases" (Turuseta v Wyassup-Laurel Glen Corp., 91 AD3d 632, 634). "Although prior damage awards in cases involving similar injuries are not binding upon the courts, they guide and enlighten them with respect to determining whether a verdict in a given case constitutes reasonable compensation" (Blair v Coleman, 211 AD3d 671, 674 [internal quotation marks omitted]). "However, consideration should also be given to other factors, including the nature and extent of the injuries" (Taveras v Vega, 119 AD3d 853, 854; see Ciuffo v Mowery Constr., Inc., 107 AD3d 1195, 1197). Here, considering the nature and the extent of the injuries sustained by the plaintiff and the relevant precedent, the awards for past and future pain and suffering, as reduced by the Supreme Court, do not deviate materially from what would be reasonable compensation (see Barnhard v Cybex Intl., Inc., 89 AD3d 1554, 1557; Bissell v Town of Amherst, 56 AD3d 1144, 1147-1148; Ruby v Budget Rent A Car Corp., 23 AD3d 257, 257-258; cf. Yu v New York City Health & Hosps. Corp., 191 AD3d 1040, 1041-1043).
In addition, the award of damages for future medical expenses was supported by competent evidence, which established the need for, and the cost of, the plaintiff's medical care (see Wynter v Transdev Servs., Inc., 207 AD3d at 787; Yu v New York City Health & Hosps. Corp., 191 AD3d at 1043; Flaherty v Fromberg, 46 AD3d 743, 744-746).
III. Collateral Source Hearing Pursuant to CPLR 4545
Turning to the Supreme Court's denial of that branch of the defendant's posttrial [*3]motion which was pursuant to CPLR 4545 for a collateral source hearing on the issue of future medical expenses, we conclude, for the reasons that follow, that the court improperly denied that branch of the defendant's motion and, therefore, should have held a collateral source hearing on the issue of future medical expenses.
A. Collateral Sources and CPLR 4545
It is well-established that private "health insurance benefits not subject to any lien payable by the plaintiff" may constitute a collateral source in relation to a plaintiff's medical expenses (Kihl v Pfeffer, 47 AD3d 154, 164, citing Panattoni v Inducon Park Assoc., 247 AD2d 823, 824). The question presented here, however, is not simply whether a defendant may be entitled to a collateral source offset for future medical expenses that will, with reasonable certainty, be paid by a private health insurer. Instead, the primary question on the issue of collateral source offsets is whether a defendant may establish entitlement to an offset in circumstances, such as this one, involving an uninsured plaintiff who is eligible for coverage under the ACA.
"Under [the common-law collateral source] rule, a personal injury award may not be reduced or offset by the amount of any compensation that the injured person may receive from a source other than the tortfeasor" (Inchaustegui v 666 5th Ave. Ltd. Partnership, 96 NY2d 111, 115 [internal quotation marks omitted]). However, in New York, this "rule was modified by statute" (id. at 116 n 3). "CPLR 4545 . . . permits a court to find that certain awarded damages were or will, with reasonable certainty, be replaced or indemnified from a collateral source" (Andino v Mills, 31 NY3d at 556). Moreover, since "CPLR 4545[ ] is a statute enacted in derogation of the common law," it must "be strictly construed . . . in the narrowest sense that its words and underlying purposes permit" (Oden v Chemung County Indus. Dev. Agency, 87 NY2d 81, 86 [citations omitted]).
"The statute, by its terms, does not specify the procedures to be employed by the trial court in making the appropriate [collateral source] deductions" (Turuseta v Wyassup-Laurel Glen Corp., 91 AD3d 635, 636), other than stating that any such "deduction[s] . . . shall be made by the trial court after the rendering of the jury's verdict" (CPLR 4545[a]). As a result, trial courts typically conduct posttrial evidentiary hearings to gather facts necessary to determine whether, and the extent to which, a defendant is entitled to an offset (see Firmes v Chase Manhattan Auto. Fin. Corp., 50 AD3d 18, 32-37; Eschberger v Consolidated Rail Corp., 174 AD2d 983, 984; Damiano v Exide Corp., 970 F Supp 222, 229 [SD NY]). "Each case . . . must be judged on its own unique facts and merits" (Kihl v Pfeffer, 47 AD3d at 167). At the hearing, "[t]he moving defendant bears the burden of establishing an entitlement to a collateral source reduction of an award for past or future economic loss" (id. at 163; see Zhou v Tuxedo Ridge, LLC, 180 AD3d 960, 965). "The standard of proof that must be applied is that of reasonable certainty, which is more than a preponderance of the evidence but less than proof beyond a reasonable doubt, and which has been interpreted by this Court as meaning clear and convincing evidence that the result is highly probable" (Firmes v Chase Manhattan Auto. Fin. Corp., 50 AD3d at 33 [citation and internal quotation marks omitted]).
However, "applications for collateral source hearings [are] governed by a showing that is less than the ultimate hearing burden" (id. at 35). "To be entitled to a collateral source hearing, the defendant must [merely] tender some competent evidence from available sources that the plaintiff's economic losses may in the past have been, or may in the future be, replaced, or the plaintiff indemnified, from collateral sources" (Nunez v City of New York, 85 AD3d 885, 887-888 [alteration and internal quotation marks omitted]). "An application for a collateral source hearing may be timely made at any time before the judgment is entered, unless the court directs otherwise" (Turuseta v Wyassup-Laurel Glen Corp., 91 AD3d at 636 [alteration and internal quotation marks omitted]).
B. The Parties' Contentions
Here, in support of that branch of its motion which was pursuant to CPLR 4545 for a collateral source hearing, the defendant asserted that it was entitled to a collateral source offset on the award of damages for future medical expenses, since the plaintiff purportedly was eligible for an insurance policy available pursuant to the ACA through New York State's Health Plan Marketplace (hereinafter the Marketplace), which, if procured, would pay for some portion of the plaintiff's future medical expenses. In support of that branch of the defendant's motion, the defendant submitted affidavits from a licensed insurance broker and a forensic economist. The broker identified a specific policy issued by Fidelis available on the Marketplace and provided various details relating thereto, including, among other things, the types of care covered by the [*4]policy, the premium costs, and the maximum annual out-of-pocket costs. The economist opined that, if the plaintiff obtained the Fidelis policy, the future value of his future medical expenses would be $36,248,230. Since the jury awarded the plaintiff $40,000,000 for such expenses, the defendant sought a hearing to demonstrate its entitlement to an offset of approximately $3.75 million.
In opposition to that branch of the defendant's motion which was pursuant to CPLR 4545 for a collateral source hearing, the plaintiff argued only that the defendant was not entitled to a hearing because "the jury's award for future medical expenses . . . was not itemized by specific medical need."
C. The Supreme Court's Determination
Initially, we note that the Supreme Court's denial of that branch of the defendant's motion which was pursuant to CPLR 4545 for a collateral source hearing was improperly based upon contentions not advanced by the plaintiff (see Misicki v Caradonna, 12 NY3d 511, 519; Rosenblatt v St. George Health & Racquetball Assoc., LLC, 119 AD3d 45, 54). The court denied that branch of the defendant's motion on grounds different than those proffered by the plaintiff, and the record contains no indication that the defendant was provided an opportunity to address those grounds before the court rendered its determination.
In an order dated October 25, 2019, the Supreme Court concluded that the defendant's collateral source offset contention would improperly compel the plaintiff to procure insurance against his will. The court further reasoned that insurance coverage that a plaintiff may be able to procure, but which a plaintiff does not currently have, cannot qualify as "a collateral source within the meaning of CPLR 4545." On appeal, the plaintiff adopts the court's reasoning, while also raising a contention that the defendant was not entitled to a collateral source hearing because the jury's award for future medical expenses "was not itemized by specific medical need." We address each of these contentions in turn.
D. Obligation to Procure Health Insurance
Although an individual in the plaintiff's circumstances may have previously been deemed "uninsurable" (Kihl v Pfeffer, 47 AD3d at 159, 166), the ACA "ensured that individuals with preexisting medical conditions would not be denied coverage or pay unusually high premiums" (California v Texas, 593 US 659, 688 [Alito, J., dissenting]; see National Federation of Independent Business v Sebelius, 567 US 519, 547-548). The Supreme Court nonetheless denied that branch of the defendant's motion which was pursuant to CPLR 4545 for a collateral source hearing on the ground that "it is [the] plaintiff's prerogative whether or not to obtain coverage under the ACA[,] and CPLR 4545 simply cannot be interpreted as requiring him to do so." However, by showing that the plaintiff could reduce his own future medical expenses by millions of dollars by procuring an insurance policy available to him pursuant to the ACA, the defendant necessarily satisfied its burden of demonstrating that such expenses may be paid by a collateral source (see Nunez v City of New York, 85 AD3d at 887-888). It stands to reason that the plaintiff would act in his own economic self-interest by taking the minimally burdensome steps required to obtain available insurance coverage. The defendant should have been afforded the opportunity to offer evidence at a hearing to demonstrate why the plaintiff could be expected to obtain such coverage and whether doing so would, with reasonable certainty, reduce his out-of-pocket costs for future medical expenses.
Moreover, as the defendant's expert insurance broker noted, the plaintiff was legally obligated to obtain health insurance. Pursuant to the ACA, most Americans must obtain "minimum essential coverage" (26 USC 5000A[a]; see National Federation of Independent Business v Sebelius, 567 US at 539). Although Congress, in 2017, "effectively nullified the [financial] penalty" originally imposed upon those who were required, but failed, to procure insurance coverage (California v Texas, 593 US at 665), that does not negate the fact that the ACA requires most Americans to procure coverage. The decision of Congress, in effect, to eliminate the financial penalty may have rendered the federal government unable to enforce the ACA against individuals, but the law nonetheless requires most Americans to comply with its mandate. The plaintiff's contention that it is improper to expect him to perform an act that he is required to perform under federal law is, therefore, without merit (see National Federation of Independent Business v Sebelius, 567 US at 539).
Plaintiffs are also required to mitigate their damages and thus "make reasonable exertions to render the[ir] injur[ies] as light as possible" (Eskenazi v Mackoul, 72 AD3d 1012, 1014 [internal quotation marks omitted]). To the extent that a plaintiff can mitigate his or her damages [*5]by procuring insurance coverage that would offset some portion of his or her future medical expenses, he or she cannot simply decline to do so without a plausible explanation and avoid potential consequences (see e.g. Mack-Cali Realty, L.P. v Everfoam Insulation Sys., Inc., 110 AD3d 680, 682; Matter of Palmblad v Gibson, 63 AD3d 844, 845). The decision of the Appellate Division, Third Department, in Matter of Rensselaer County Sheriff's Dept. v New York State Div. of Human Rights (131 AD3d 777) is instructive on this point. In that case, a county agency was directed by the Commissioner of Human Rights to pay both economic and noneconomic damages to a former employee for sexual harassment (id. at 777). On appeal, the agency argued that the Commissioner should not have directed it to pay damages relating to the employee's lost pension benefits because the employee purportedly "failed to mitigate damages relating" thereto by not "obtain[ing] a collateral offset in the form of [certain] disability retirement benefits" (id. at 783). The Third Department rejected this contention due to the agency's failure to establish that the employee was "qualified for such benefits" or to show "what amount [she] would receive if she were so entitled" (id.). Here, by contrast, the defendant's submissions demonstrated that the plaintiff was eligible for a specific insurance policy pursuant to the ACA, that he could procure it through the Marketplace, and that the policy would pay the cost of certain future medical treatment in a manner that would reduce his future medical expenses by millions of dollars. At a collateral source hearing, the Supreme Court must determine whether the defendant's evidence establishes those facts with reasonable certainty (see Nunez v City of New York, 85 AD3d at 887-888).
To be clear, a plaintiff's purported failure to mitigate damages is generally an issue for the factfinder during trial (see e.g. Krimkevitch v Imperiale, 104 AD3d 649, 649). In this case, we do not decide, for example, whether a defendant may be entitled to an offset in a situation where a plaintiff otherwise may have been entitled to a particular benefit that would have reduced his or her future medical expenses, yet failed to comply with an application deadline or some condition precedent. The mitigation issue determined here addresses the plaintiff's contention that it is improper to anticipate, for purposes of the "reasonable certainty" standard of CPLR 4545, that he will comply with his common-law duty.
E. The Meaning and Intent of CPLR 4545 Does Not Require Denial of the Defendant's Request for a Collateral Source Hearing
The Supreme Court also denied that branch of the defendant's motion which was pursuant to CPLR 4545 for a collateral source hearing based on its interpretation of the statutory text of CPLR 4545. The court determined that "to construe healthcare coverage that does not presently exist as a collateral source within the meaning of CPLR 4545 [would be] inconsistent with the strict construction of the statute." The court did not explain its reasons for reaching this conclusion. However, the court's reasoning was likely premised upon the portion of the statute that provides that a "court must find that the plaintiff is legally entitled to the continued receipt of [a] collateral source, pursuant to a contract or otherwise enforceable agreement," before awarding a defendant an offset for future expenses (CPLR 4545[a] [emphasis added]). We do not read this language as prohibiting a defendant from potentially obtaining an offset under the circumstances presented.
"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (S.H. v Diocese of Brooklyn, 205 AD3d 180, 185 [internal quotation marks omitted]). "As the clearest indicator of legislative intent is the . . . text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereto. However, an examination of the legislative history is proper where the language is ambiguous or where a literal construction would lead to absurd or unreasonable consequences that are contrary to the purpose of the enactment" (Fossella v Adams, 225 AD3d 98, 130 [alterations, citations, and internal quotation marks omitted]). Indeed, "[a]ny statute . . . must be interpreted and enforced in a reasonable . . . manner in accordance with its manifest intent and purpose" (Matter of Carver v Nassau County Interim Fin. Auth., 142 AD3d 1003, 1007 [internal quotation marks omitted]). "A court should avoid a statutory interpretation rendering the provision meaningless or defeating its apparent purpose" (id. at 1008 [alterations and internal quotation marks omitted]).
As apparently interpreted by the Supreme Court, the "continued receipt" language of CPLR 4545 arguably implies that a court must limit itself to collateral sources that currently provide benefits to a plaintiff when considering whether such sources will, with reasonable certainty, replace or indemnify "certain awarded damages" in the future (Andino v Mills, 31 NY3d at 556). Under this reading, CPLR 4545 bars the defendant from obtaining an offset against the plaintiff's future medical [*6]expenses, since the plaintiff was uninsured at the time of trial and, therefore, was not receiving the benefits of the applicable insurance policy available pursuant to the ACA, or any policy, at that time. Indeed, an Appellate Division, Fourth Department, majority opinion interpreted the relevant statutory language that way in Young v Tops Mkts., Inc. (283 AD2d 923). There, in a split 3-2 decision, the Young majority concluded that a defendant was not entitled to an offset against the plaintiff's potential future receipt of Social Security disability benefits as the plaintiff had "never applied for [such] benefits" (id. at 926).
However, this Court reads the "continued receipt" language of CPLR 4545 as simply requiring that the collateral source be one that the plaintiff will, with reasonably certainty, continuously receive the benefits of during the period for which the defendant is seeking the offset. In other words, the "continued receipt" language merely requires the defendant to show that, during some period in the future for which the plaintiff was awarded damages for medical expenses, a collateral source will, with reasonable certainty, replace or indemnify some portion of the awarded damages. The two dissenters in Young supported this interpretation of CPLR 4545, concluding that "the statute does not require [a] plaintiff [to] have applied for or [to] currently be in receipt of [the relevant] benefits in order for [the] defendant[ ] to be entitled to an offset against a corresponding element of future damages" (id. [Scudder and Kehoe, JJ., dissenting in part]). We agree.
In reaching this conclusion, the Young dissenters stated "that it is the vested statutory character of the [Social Security] benefits [at issue] and the plaintiff's reasonably anticipatable entitlement thereto, and not whether the plaintiff has yet applied for such benefits or is currently in receipt of them, that is the pertinent issue under CPLR 4545(c)" (id. at 927). They persuasively cautioned that "[a]ny other approach would in essence exempt a plaintiff from the consequences of his [or her] own dereliction in failing or refusing to apply for [the] benefits, or reward [the plaintiff] for his [or her] guile in refraining from applying for such benefits until after . . . obtain[ing] a judgment in the action" (id.).
The Legislature's intent in enacting and amending CPLR 4545, as exhibited by its legislative history, also supports this reading. Since the question of whether the statute prohibits a court from awarding a collateral source offset against future medical expenses which, at the time of trial, a plaintiff does not receive the benefits of, is not clearly established by the statutory text, it is appropriate to consider the legislative history (see Fossella v Adams, 225 AD3d at 130).
The Legislature's primary "objective" in enacting CPLR 4545 "was to eliminate windfalls and double recoveries for the same loss" (Fisher v Qualico Contr. Corp., 98 NY2d 534, 537, citing Governor's Program Mem, L 1986, ch 220, 1986 NY Legis Ann at 135-136; see Andino v Mills, 31 NY3d at 561; McKnight v New York City Tr. Auth., 150 AD3d 840, 841-842). The statute also serves "to keep down the liability insurance costs of policyholders" (Humbach v Goldstein, 229 AD2d 64, 67; see Oden v Chemung County Indus. Dev. Agency, 87 NY2d 81, 87-88). In 1985, the Legislature amended the statute to include future damages within its ambit for the first time, as it had only permitted offsets for past damages up to that point (see Bryant v New York City Health & Hosps. Corp., 93 NY2d 592, 605-606). The purpose of that particular change was to "extend" the "practice" of awarding offsets for "those sources of compensation that will, with reasonable certainty, be available to the plaintiff in the future" (Governor's Program Mem, Bill Jacket, L 1985, ch 294 at 9 [emphasis added]; see Bryant v New York City Health & Hosps. Corp., 93 NY2d at 606). This was deemed "[c]onsistent with th[e] principle" of "avoid[ing] double recoveries by plaintiffs while ensuring that uncompensated losses are fully compensated" (Governor's Program Mem, Bill Jacket, L 1985, ch 294 at 9).
The purpose of CPLR 4545, therefore, would be served by interpreting the statute in a way that, at a minimum, affords the defendant the opportunity to present its evidence at a collateral source hearing. If this Court were to interpret the statute's "continued receipt" language as prohibiting defendants from obtaining a collateral source offset against future medical expenses in the type of circumstances presented, it would allow plaintiffs to obtain a windfall, recovering twice for the same loss. Under such an interpretation, and as the dissenters in Young cautioned, a plaintiff could "refrain[ ] from applying for" an insurance policy available pursuant to the ACA "until after he [or she] has obtained a judgment" (Young v Tops Mkts., Inc., 283 AD2d at 927), thereby recovering a larger award for future medical expenses than he or she otherwise would be entitled. By contrast, construing the statutory language as providing the defendant with the opportunity to prove at a hearing that it should obtain an offset for an insurance policy available pursuant to the ACA "that will, with reasonable certainty, be available to" an uninsured "plaintiff in the future" [*7](Governor's Program Mem, Bill Jacket, L 1985, ch 294 at 9) avoids the type of double recovery that CPLR 4545 serves to guard against.
This conclusion to construe the language of CPLR 4545 as providing the defendant with the opportunity to prove at a hearing that it should obtain an offset under the circumstances herein is also supported by another aspect of the history of CPLR 4545. The statute now applies broadly to "any collateral source, except for life insurance and those payments as to which there is a statutory right of reimbursement" (CPLR 4545[a]). This language was added to CPLR 4545 in 2009, apparently to clarify the scope of collateral sources that prevent double recovery (see L 2009, ch 494, pt F, § 2). Prior to the legislation implementing that change, the statute provided exceptions for specific sources, as opposed to the current broad exception for those sources "to which there is a statutory right of reimbursement" (CPLR 4545[a]). CPLR 4545 applied to "any collateral source such as insurance (except for life insurance), social security (except those benefits provided under title XVIII of the social security act), [and] workers' compensation or employee benefit programs (except such collateral sources entitled by law to liens against any recovery of the plaintiff)" (former CPLR 4545[a]; see Bryant v New York City Health & Hosps. Corp., 93 NY2d at 60).
The former exception for title XVIII of the Social Security Act, which is more "commonly known as the Medicare Act" (Trezza v Trezza, 104 AD3d 37, 38), is notable. Even though individuals without a qualifying disability are not eligible for Medicare until age 65 (see NY City Health & Hosps. Corp. v Bane, 87 NY2d 399, 402), the Legislature nonetheless viewed Medicare benefits as a collateral source, since it otherwise would have been unnecessary to include an exception for such benefits in CPLR 4545. Absent the exception, a defendant in a case involving a 35-year-old plaintiff, for example, could plausibly seek an offset for future medical expenses during the period after the plaintiff turned 65, relying upon his or her future Medicare eligibility. This would have been the case, without the statutory exception, even though such a plaintiff would not become Medicare eligible for decades, absent a qualifying disability. Therefore, the express Medicare exception formerly in CPLR 4545 supports the conclusion that the statute's "continued receipt" language does not limit the universe of collateral sources to those a plaintiff is currently receiving at the time of trial.
The decision of the Court of Appeals in Bryant v New York City Health & Hosps. Corp. (93 NY2d 592), which involved, inter alia, a wrongful death action involving Social Security survivor benefits, also supports this conclusion (see id. at 608-610). Although, unlike the plaintiff herein, the infant plaintiff in Bryant was actively receiving the benefits at issue at the time of trial (see id. at 606-610),[FN1] the decision is still instructive. In considering whether Social Security survivor benefits qualified as a collateral source within the meaning of CPLR 4545, the Court of Appeals rejected an overly expansive reading of the phrase "contract or otherwise enforceable agreement," which would have rendered such benefits outside of the statute's ambit. Instead, the Court concluded that "[a] more reasonable interpretation of the statute, which would give effect to both the words and the intent of the Legislature, would be that [such] benefits can be used to offset future losses provided that with 'reasonable certainty' they will indemnify [a] plaintiff" (id. at 609-610). The Court reasoned that "[a]pplication of the 'contract or otherwise enforceable agreement' requirement should be limited to a situation where [a] plaintiff does not have a protected interest in a government entitlement" (id. at 610).
The decision by the Court of Appeals in Bryant is instructive for two reasons. First, the Court's determination was influenced by the interpretative maxim that a court should not "hold that in one part of the same statute the legislature deliberately enacted one thing, and then in a subsequent part of the same statute revoked the previous enactment without any apparent reason for so doing" (id. at 610 n 8 [alterations and internal quotation marks omitted]). Since an expansive reading of the phrase "contract or otherwise enforceable agreement" would have "categorically read Social Security out of the statute as a potential source for offsetting future recovery," even though it elsewhere "explicitly state[d]" that Social Security was "a collateral source," the Court rejected such an expansive reading (id. at 609). Here, interpreting the phrase "continued receipt" in a way that limits collateral sources to those sources of which the plaintiff is currently a beneficiary would conflict with the statute's broad language, which allows courts to consider, with certain exceptions, [*8]"any collateral source" that "will, with reasonable certainty," replace or indemnify any awarded future damages (CPLR 4545[a]).
Second, Bryant holds that a plaintiff's "protected interest in a government entitlement" may be considered for the purposes of a collateral source offset (id. at 610). Although the ACA does not establish a government entitlement, such as Medicare or Social Security entitlements, it does entitle "individuals with preexisting medical conditions," for example, to "not be denied coverage or pay unusually high premiums" (California v Texas, 593 US at 688). While different than a protected interest in a government entitlement, the provisions of the ACA nonetheless support the defendant's contention that the plaintiff "will, with reasonable certainty," be able to reduce his out-of-pocket expenses in the future through an insurance policy available pursuant to the ACA. Similar to the Social Security benefits at issue in Young v Tops Mkts., Inc., "it is the vested statutory character of the benefits" provided by the ACA (283 AD2d at 927)—that is, the plaintiff's right to obtain insurance coverage and not pay a relatively exorbitant price for it, despite his pre-existing conditions (see California v Texas, 593 US at 688; National Federation of Independent Business v Sebelius, 567 US at 547-548)—"and [his] reasonably anticipatable entitlement thereto, and not whether the plaintiff has yet applied for such benefits or is currently in receipt of them, that is the pertinent issue under CPLR 4545(c)" (283 AD2d at 927).
The Supreme Court, in concluding that the defendant was not entitled to a collateral source hearing, relied upon Malmberg v United States (816 F3d 185 [2d Cir]), a determination of the United States Court of Appeals for the Second Circuit. However, that case is factually and legally inapposite to the circumstances presented here. In Malmberg, the Second Circuit concluded that the federal government, which was sued for medical negligence in the performance of a surgery at a Veteran's Administration (hereinafter VA) facility, was not entitled to a collateral source offset against a plaintiff's future medical expenses (see id. at 190-196). The government asserted that the plaintiff could receive treatment at a VA facility in lieu of receiving treatment elsewhere, and that it was, thus, entitled to an offset relating to such treatment (see id. at 189-190). In rejecting the government's contention, the Second Circuit focused its concerns on the unique circumstances presented. The Second Circuit described the government's request for an offset as an "unseemly [attempt] to force a plaintiff to receive medical services from the tortfeasor responsible for his injuries" (id. at 190). That concern, which was legitimate in the context of that case, is inapplicable here.
The Second Circuit also reasoned, in Malmberg, that accepting the federal government's position would "deprive plaintiffs of the ability to choose their own medical services caregiver" (id. at 194). However, the Second Circuit noted the "difference between insurance policies that allow patients to select their own providers and reimburse payments for those services" on the one hand, "and programs that allow government agencies to select medical providers for the patients" on the other (id. at 195). To the extent that procuring a particular insurance policy would curtail treatment options to the point of effectively depriving a plaintiff of the ability to choose his or her own providers, a defendant should not be entitled to a collateral source offset (see id. at 194-195). Here, that is an issue best left for a collateral source hearing, as this record contains no evidence regarding whether, or the extent to which, the insurance policy available pursuant to the ACA at issue might limit the plaintiff's treatment options.
F. The Damages Itemization Argument Is Without Merit
The plaintiff's contention that the defendant was not entitled to a collateral source hearing because the jury's award for future medical expenses "was not itemized by specific medical need" is without merit.
The plaintiff has not pointed to any legal authority that would prohibit a defendant from obtaining an offset against future medical expenses unless a jury's verdict is itemized in the manner suggested, i.e., by specifying amounts, for example, applicable to orthopedic care, physical therapy, diagnostic studies, etc. The plaintiff's argument contravenes the express purpose of CPLR 4545 by contending, in effect, that, absent an itemized verdict with that level of specificity, the defendant cannot satisfy its burden of demonstrating that the "collateral source payments" at issue will "specifically correspond to particular items of economic loss awarded by the [jury]" (Kihl v Pfeffer, 47 AD3d at 164). The Court of Appeals has recognized that "CPLR 4111 [former] (f) [now redesignated as CPLR 4111(e)], which requires a detailed itemization of the elements included in [a] jury's damage award, . . . operate[s] to facilitate th[at] task" (Oden v Chemung County Indus. Dev. Agency, 87 NY2d at 89). And "CPLR 4111 [only] requires that juries itemize verdicts by [*9]specifying, among other things, the categories of damages, whether damages are for past or future losses, and the number of years over which a future damages award is intended to compensate the plaintiff" (Bryant v New York City Health and Hosps. Corp., 93 NY2d at 602 n 5). The categories of damages delineated by the statute include, for example, "medical expenses, . . . loss of earnings, . . . and pain and suffering," and juries must also "set forth the period of years over which [future damages] amounts are intended to provide compensation" (CPLR 4111[e]). CPLR 4111 does not, however, require a verdict to contain the level of specificity advocated by the plaintiff before a defendant can seek relief under CPLR 4545.
In any event, the jury's $40,000,000 award for future medical expenses was premised upon the opinions offered by the plaintiff's life-care plan and economic experts, and the defendant's experts relied upon the opinions of the plaintiff's experts in formulating their own opinions. As the defendant's contention is premised upon the theory that an insurance policy available pursuant to the ACA will reduce the plaintiff's out-of-pocket costs for the future medical expenses awarded by the jury, it cannot be said that the verdict was insufficiently itemized to permit the defendant to meet its burden (see Andino v Mills, 31 NY3d at 562; cf. Shue v Red Cr. Cent. School Dist., 266 AD2d 899, 900). The defendant should be afforded the opportunity to satisfy that burden, with reasonable certainty, at a collateral source hearing.
IV. Conclusion
Since the defendant offered competent evidence showing its entitlement to a collateral source hearing pursuant to CPLR 4545 on the issue of future medical expenses, the Supreme Court erred in denying that branch of the defendant's motion which was for such a hearing (see Nunez v City of New York, 85 AD3d at 888). The defendant's contentions regarding the plaintiff's nonhearsay statement at trial, the jury's verdict on the issue of liability as contrary to the weight of the evidence, the deprivation of a fair trial, and the alleged excessive nature of the awards of damages for past and future pain and suffering and future medical expenses, however, are without merit for the reasons stated herein.
The parties' remaining contentions are either unpreserved for appellate review or without merit.
Accordingly, the appeal from the order is dismissed, the appeal from the judgment is dismissed, and the amended judgment is modified, on the law, by deleting the provision thereof in favor of the plaintiff and against the defendant awarding the plaintiff damages in the principal sum of $40,000,000 for future medical expenses; as so modified, the amended judgment is affirmed insofar as appealed from, that branch of the defendant's motion which was pursuant to CPLR 4545 for a collateral source hearing on the issue of future medical expenses is granted, the order dated October 25, 2019, is modified accordingly, and the matter is remitted to the Supreme Court, Kings County, for a collateral source hearing pursuant to CPLR 4545 on the issue of future medical expenses and a determination as to any collateral source offsets to which the defendant may be entitled, and for the entry of an appropriate second amended judgment thereafter.
DUFFY, J.P., FORD and DOWLING, JJ., concur.
ORDERED that the appeal from the order is dismissed, without costs or disbursements, as the right of direct appeal therefrom terminated with the entry of the judgment in the action (see Matter of Aho, 39 NY2d 241); and it is further,
ORDERED that the appeal from the judgment is dismissed, without costs or disbursements, as the judgment was superseded by the amended judgment; and it is further,
ORDERED that the amended judgment is modified, on the law, by deleting the provision thereof in favor of the plaintiff and against the defendant awarding the plaintiff damages in the principal sum of $40,000,000 for future medical expenses; as so modified, the amended judgment is affirmed insofar as appealed from, without costs or disbursements, that branch of the defendant's motion which was pursuant to CPLR 4545 for a collateral source hearing on the issue of future medical expenses is granted, the order dated October 25, 2019, is modified accordingly, and the matter is remitted to the Supreme Court, Kings County, for a collateral source hearing pursuant to CPLR 4545 on the issue of future medical expenses and a determination as to any collateral source offsets to which the defendant may be entitled, and for the entry of an appropriate second amended judgment thereafter.
ENTER:
Darrell M. Joseph
Clerk of the Court

Footnotes

Footnote 1: The appellant's brief in Bryant states that the infant plaintiff was actively receiving survivor benefits at the time of trial (see 1999 WL 33660330 at *33-34).